Elinor R. REINER, Plaintiff,

v.

STATE OF NEW JERSEY, Secretary of State, Office of Administrative Law, and Ronald Parker, Defendants.

Civ. A. No. 88–1373.

United States District Court, D. New Jersey.

March 15, 1990.

Alice W. Ballard, Jean R. Sternlight, Philadelphia, Pa., for plaintiff.

Talbot Kramer, Deputy Atty. Gen., Dept. of Law and Public Safety, Div. of Law, Claims Service Section, Trenton, N.J., for defendants State of N.J., Secretary of State, and Office of Administrative Law.

Robert A. Fagella, Zazzali, Zazzali, Fagella & Nowak, Newark, N.J., for defendant Ronald Parker.

OPINION AND ORDER

POLITAN, District Judge.

Plaintiff, Elinor R. Reiner, instituted this action on March 23, 1988. She filed an Amended Complaint on February 9, 1989 charging the defendants, State of New Jersey, Secretary of State, Office of Administrative Law, and Ronald Parker with various acts in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5–1 *et seq.*

Presently before the Court is plaintiff's motion to preserve her right to a jury trial on her New Jersey LAD claim. The Supreme Court of New Jersey recently addressed this specific issue and held that an action under the LAD does not "entail the right to a trial by jury." *Shaner v. Horizon Bancorp*, 116 N.J. 433, 457, 561 A.2d

1130 (1989). Defendants urge the Court to follow this precedent. Their arguments are, however, unpersuasive because the issues presented and the method of analysis this Court must follow to resolve those issues are decidedly distinct from those applied in *Shaner.* Most significantly, this Court must decide if the Seventh Amendment to the Constitution requires a jury trial on the LAD claim irrespective of the New Jersey Supreme Court's decision in *Shaner.*

▮ Plaintiff's right to a jury trial in federal court is determined as a matter of federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610–11, 9 L.Ed.2d 691 (1962). This principle applies even if the substantive claim, as in the case at bar, finds its source in state law. *Id.* ("Only through a holding that the jury trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved.") Before addressing the Seventh Amendment, however, this Court must first examine the statute to determine if it either explicitly or implicitly provides for a right to a jury trial. This approach is consistent with the strong federal policy of avoiding constitutional decisions when possible. *See Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1977) (*citing United States v. Thirty-seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822 (1971) *quoting Crowell v. Benson,* 285 U.S. 22, 65, 52 S.Ct. 285, 298, 76 L.Ed. 598 (1932)).

The New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq,* was first enacted in 1945. It is designed to eliminate discrimination "because of race, creed, color, national origin, ancestry, age, sex, marital status or because of ... liability for service in the Armed Forces of the United States." N.J.S.A. 10:5–3. As first enacted, it created a comprehensive scheme of administrative relief vesting broad remedial powers in the Director of the Division of Civil Rights to accomplish its objectives.

*See N.J. Builders, Owners & Managers Ass'n v. Blair,* 60 N.J. 330, 288 A.2d 855 (1972). It was amended in 1979 to authorize judicial relief as an alternative to the administrative scheme. N.J.S.A. 10:5–13. The amendment did not specifically provide that the same remedies available in an administrative proceeding would be available in a judicial proceeding. New Jersey courts have, however, consistently held that a Court may "grant remedies similar to those provided in N.J.S.A. 10:5–27 through its equitable or legal powers." *Shaner,* 116 N.J. at 440, 561 A.2d 1130. ("Thus, awards that include monetary damages as a constituent but incidental aspect of broader remedial relief have long been recognized in judicial actions under the LAD.")

There is nothing in the LAD which expressly provides a right to a jury trial. There is also little in the legislative history which would lend support to such a finding. *See Shaner* 116 N.J. at 443, 561 A.2d 1130. Significantly, as noted in *Shaner,* the New Jersey Legislature has a long history of expressly providing such a right when creating new statutory causes of action.[1] The absence of such a provision in the LAD is thus indicative of the Legislature's intent not to specifically provide the right to jury trial on a LAD claim. This intent is not, however, dispositive of the issues presented today. Rather, this Court must analyze the requirements of the Seventh Amendment with the clear understanding that "there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts." *Byrd v. Blue Ridge Cooperative,* 356 U.S. 525, 538, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1957) (*citing Herron v. Southern Pacific Co.,* 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931)).

▮ The Seventh Amendment provides that, "... in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

1. *See* N.J.S.A. 2A:15–56 (labor dispute injunctions); N.J.S.A. 2A:62–4 (quiet-title actions); N.J.S.A. 2A:62–21 (action to determine the existence and validity of covenants); N.J.S.A. 2A:62– 24 (actions to determine title to riparian lands and lands under water); N.J.S.A. 3B:12–24 (civil proceedings to determine mental incompetency).

preserved...." In *Tull v. U.S.,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) the Supreme Court explained that this language requires a jury trial "on the merits in those actions that are analogous to 'suits at common law.'" A jury trial is required on an action that would have been brought in an English law court as opposed to "cases tried in courts of equity or admiralty" which did not traditionally encompass a jury right. *Id.* Importantly, the Supreme Court has interpreted "common law" to mean "not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined...." *Parsons v. Bedford,* 3 Pet. 433, 446–447, 7 L.Ed. 732 (1830). The Seventh Amendment thus applies with equal force to "statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1007–08, 39 L.Ed.2d 260 (1973); *Tull v. U.S.,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987).[2]

The Supreme Court has outlined a two-pronged standard to determine if a newly created statutory cause of action is more analogous to a suit brought in a court of law rather than a court of equity. *Tull v. U.S.,* 481 U.S. at 417, 107 S.Ct. at 1835 (1987). First, a court must compare "the statutory action to 18th century actions brought in the Courts of England prior to the merger of the courts of law and equity." *Id., (citing Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)). Second, the Court must examine "the remedy sought and determine whether it is legal or equitable in nature." *Id.* The most important prong is characterizing the relief, *Id.* 107 S.Ct. at 1837 (*citing Curtis v. Loether,* 415 U.S. at 196, 94 S.Ct. at 1009), because attempting to find a similar common law cause of action can often result in an "abstruse historical" search. *See Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1969).[3]

N.J.S.A. 10:5–17 circumscribes the remedial powers of the Director under the LAD. This section provides, in relevant part, that "the affirmative action taken by the director may include the award of threefold damages to the person or persons aggrieved by the violation." N.J.S.A. 10:5–17. The Courts, as indicated, exercise authority parallel to the Director under the 1979 amendments to the LAD. The *Shaner* Court specifically recognized the availability of such relief under the LAD and wrote: "the Director's broad remedial powers can include the power to grant forms of legal relief such as compensatory damages (citations omitted) as well as incidental damages for pain and suffering or personal humiliation." 116 N.J. at 439, 561 A.2d 1130. Damages are and have always been

---

**2.** The Federal analysis is thus markedly distinct from the "historical" analysis employed in the state system. Using this methodology, New Jersey Courts have consistently denied a right to jury trial for newly created statutory causes of action "unless that right existed prior to the adoption of the State Constitution." *In re Livolsi,* 85 N.J. 576, 428 A.2d 1268 (1981); *See Montclair v. Stanoyevich,* 6 N.J. 479, 79 A.2d 288 (1951); *Steiner v. Stein,* 2 N.J. 367, 66 A.2d 719 (1949). As the *Shaner* Court explained, this principle would remain valid even if the statutory action encompassed traditional forms of legal relief such as compensatory damages. *Shaner, supra,* 116 N.J. at 457, 561 A.2d 1130; ("Hence a party seeking to vindicate a right to be free from discrimination does not have an entitlement to a jury trial, even if seeking only a legal remedy.").

**3.** The Court's decisions evidence a certain confusion concerning the relevance of the historical inquiry. *Pernell* indicated that even attempting such a search was unnecessary: "Whether or not a close equivalent ... existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather that in an action in equity or admiralty." *Pernell* 416 U.S. at 375, 94 S.Ct. at 1729. Although *Tull* reiterates the continued validity of this proposition, it does, to some extent, seem to resurrect the search for a historical equivalent. *See Tull,* 481 U.S. at 418, 107 S.Ct. at 1836. This court will, therefore, briefly undertake such an inquiry with the clear understanding that finding the historical equivalent of the LAD is not the sole dispositive factor.

a form of legal relief available in a court of law. The LAD, therefore, clearly creates a legal duty which, if breached, can be remedied by the traditional form of legal relief—damages. *See Curtis*, 415 U.S. at 189, 94 S.Ct. at 1005. ("A damages action under the statute sounds basically in tort— the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by defendant's wrongful breach.") The Seventh Amendment requires that when a legal remedy is available a timely jury demand be honored. Such is the case at bar.

The LAD is also sufficiently analogous to a variety of English common law actions to be characterized as a legal claim requiring a jury trial. For example, at common law an innkeeper could be found liable for refusing, without justification, to rent lodgings to a traveler. The LAD contains an analogous prohibition of similar discriminatory practices by landlords, N.J.S.A. 10:5–12(f), and thus can be likened to this common law action. *See Rogers v. Loether*, 467 F.2d 1110 (7th Cir.1972).

The statute is also analogous to a defamation, libel or other common law "dignity tort." The LAD authorizes awards for pain and suffering and, most importantly, finds its source in the recognition of the dignity and right of each individual to be free from the insult of discrimination. The statute recognizes this natural right and, through damages, seeks to make whole the individual injured by discriminatory practices. It is thus clear that while no direct historical analogy can be found, either in scope or purpose, aspects of the law are sufficiently similar to various common law actions for this Court to conclude that it would have been tried in an English law court. The Court does not rest its holding on this finding but concludes, given the clear legal remedies available under the LAD, that the Seventh Amendment requires that plaintiff's jury demand be honored.

This analysis is not altered by the *Shaner* decision. *Shaner* held that irrespective of the availability of legal relief no jury right was implicated for three principal reasons. First, the Court reasoned that the statute was essentially equitable in nature because its overriding objective was the eradication of societal discrimination. The Court characterized damage awards as a "constituent but incidental aspect" of the statute. Second, the Court felt that granting a jury trial, "with its attendant delays", would be inconsistent with the legislative intent of eradicating administrative backlogs by providing a judicial alternative to the original administrative scheme. Finally, the Court feared that a "juries' focus on such compensatory awards may divert courts from fashioning the kind of continuing affirmative relief that is most conducive to rectifying employment injustice, and thereby may deserve the objectives of the LAD." *Id.* 116 N.J. at 455, 561 A.2d 1130.

The administrative and policy concerns expressed in *Shaner* are not persuasive in this forum. It is well settled that in the federal system the right to a jury trial can not "be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency." *Beacon Theatres v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1958). This principle applies even if the legal issue presented is characterized as incidental to the equitable. *Dairy Queen v. Wood*, 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1961). So long as a legal cause of action is implicated and legal relief is authorized, the fundamental promise in the federal system is that a timely demand for a jury will be preserved. *Id. citing, Thermo–Stitch, Inc. v. Chemi–Chord Processing Corp.*, 294 F.2d 486, 491 (1961).

Similarly, the constitutional right to a jury trial in the federal system can not be abridged by administrative concerns over the length of the federal docket. This Court should always, like any Court, strive to be as efficient as possible. But efficiency should rarely, if ever, impel our decisions. Clearly, it should never be used as a tool to impair a citizen's constitutional rights. The paramount promise of the Seventh Amendment must be preserved even

at the predictable expense of time, money and efficiency.

This Court also does not foresee that fulfilling the mandate of the Constitution would either frustrate the goals of the LAD or impair the ability of this Court to fashion appropriate equitable relief. These principles are not, as the *Shaner* decision suggests, mutually exclusive. Rather, they all serve the same objective and can, if properly applied, complement each other. As the Supreme Court explained in *Beacon:*

> ... if there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable cause would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first.

The right to a jury trial is, however, a Constitutional right and the Court's "discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Id.; see also, Katchen v. Landy,* 382 U.S. 323, 339, 86 S.Ct. 467, 478, 15 L.Ed.2d 391 (1966) ("Both *Beacon Theatres* and *Dairy Queen* recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim.")

Moreover, in the ordinary discrimination case brought under the LAD the irreparable harm traditionally addressed by emergent equitable relief has already occurred. That is, the plaintiff has already been fired or subject to some discriminatory treatment. Thus, it would be the rare case where the Court would be pressed to invoke extraordinary remedies before giving the plaintiff the constitutional right to a jury trial. The Court's decision in *Curtis* supports this analysis.

In *Curtis* the Court rejected, in the context of housing discrimination suits brought under Title VIII, similar policy arguments advanced by the *Shaner* Court. The Court wrote:

> We are not oblivious to the force of petitioner's policy arguments. Jury trials may delay to some extent the disposition of Title VIII damages actions. But Title VIII actions seeking only equitable relief will be unaffected, and preliminary injunctive relief remains available without a jury trial even in damages actions (citations omitted).... More fundamentally, however, these considerations are insufficient to overcome the clear command of the Seventh Amendment.

*Curtis,* 415 U.S. at 198, 94 S.Ct. at 1010.

Similarly, in the context of the LAD this Court feels confident that it can effectively balance the need for emergent relief with the requirements of the Seventh Amendment. It is particularly important to note that the primary policy concern of the *Shaner* Court was that granting a jury trial would interfere with the overriding goal of the LAD of eliminating societal discrimination. Again, this Court finds that such a conflict is more imaginary than real. There is nothing to prevent any Court from imposing effective equitable remedies directed at this objective after affording a plaintiff a jury trial.

The fact that a litigant would be entitled to a jury trial in federal court while not in state court does not impact this decision. The federal system is entirely distinct from the state and "an essential characteristic of that system is the manner in which ... it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury." *Byrd v. Blue Ridge Cooperative,* 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1957), *citing, Jacob v. New York,* 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1969).

■ Finally, defendants' reliance on *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1980) for the proposition that the Eleventh Amendment bars granting a jury trial on the LAD claim against the State is misplaced. *Lehman* merely reiterated the long standing propo-

sition that "the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Id.* at 160, 101 S.Ct. at 2701. Jurisdiction in this matter rests primarily on Title VII of the Civil Rights Act of 1964. The LAD claim is a pendant claim. In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court specifically held that the "Eleventh Amendment and the principle of state sovereignty which it embodies ... are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." Congress has the power to abrogate state immunity and authorize suits against a state in federal court. Title VII is such an example. Granting plaintiff's jury demand does not alter this analysis or in some other unexplained way offend sovereign immunity. Rather, it seems reasonable to conclude that if the state can be sued in federal court the plaintiff must be afforded the full range of constitutional rights he or she would have against any other defendant. In short, the Seventh Amendment does not create exceptions for state defendants.

Plaintiff's motion to preserve her right to a jury trial is GRANTED.

SO ORDERED.