**Ann WALKER, Plaintiff,**

v.

**ANDERSON ELECTRICAL CONNECTORS, et al., Defendants.**

**Civ. A. No. 89–AR–1482–M.**

United States District Court, N.D. Alabama, M.D.

April 27, 1990.

As Amended May 2, 1990.

**254**

C. Michael Quinn and Ann K. Norton, Gordon Silberman Wiggins & Childs, Birmingham, Ala., for plaintiff.

William F. Gardner, William K. Thomas and Richard Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, and John C. Falkenberry, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

The court has for consideration motions by each of two defendants to strike a plaintiff's jury demand in a Title VII case. Ann Walker sues both her employer, Anderson Electrical Connectors, and her union, Local Lodge 2601, International Association of Machinists & Aerospace Workers, AFL–CIO, invoking Title VII of the Civil Rights Act of 1964 and claiming that both Anderson Electrical and Local 2601 knowingly tolerated Walker's sexual harassment by male employees and condoned vulgarities which caused Walker's working conditions to be intolerable. She also presents pendent tort claims against Anderson Electrical Connectors, under the law of Alabama for alleged invasion of privacy and outrage. She seeks damages in the form of lost wages and benefits as well as compensation for her physical pain and mental suffering. Lastly, she seeks punitive damages. Her original complaint contained the following clear demand:

The plaintiff demands a trial by struck jury on her assault and battery claims, outrage claim and invasion of privacy claim.[1]

After the publication of this court's opinions in *Beesley v. The Hartford Fire Insurance Company,* 717 F.Supp. 781 (N.D. Ala.1989), *reconsidered at* 723 F.Supp. 635 (N.D.Ala.1989), Walker filed a supplemental demand for trial by jury of her Title VII claims, whereupon defendants moved to strike her demand. Defendants' grounds were, first, that this court is incorrect in its *Beesley* decision and, second, that Walker's jury demand is not timely under Rule 38(b), F.R.Civ.P. Anticipating opinions by the Supreme Court of the United States in *Teamsters, Local No. 391 v. Terry,* — U.S. ——, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), and *Lytle v. Household Manufacturing, Inc.,* — U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), which the court thought likely to provide guidance, this court withheld ruling on Walker's right to a jury trial of her Title VII claims until the Supreme Court spoke in these two cases. Not only have *Local 391* and *Lytle* now been handed down by the Supreme Court, but this court has written *Walton v. Cowin Equipment Company, Inc.,* 733 F.Supp. 327 (N.D.Ala.1990), which explains in some detail the significance this court sees in *Local 391* and *Lytle.* This court need not repeat here what it has said already in *Beesley* and in *Walton,* and from which it does not retreat.

*The Significances of Yellow Freight Systems v. Donnelly: Or Manna from Constitution Avenue*

After *Walton* was decided, the Supreme Court decided *Yellow Freight System, Inc. v. Donnelly,* — U.S. ——, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). What the *unanimous* Supreme Court said in *Yellow Freight* proves to the satisfaction of this court that it did not misread *Local 391* and *Lytle.* If this court lacked any confidence in the correctness of its opinions in *Beesley* and *Walton,* this court can call *Yellow*

---

**1.** The assault and battery claim has since been dropped.

*Freight* unanimous "Manna from Constitution Avenue."

*Yellow Freight* was a case in which a female plaintiff had presented her Title VII sex discrimination claim to an Illinois state court. Her reasons for filing in the state court are, in this court's opinion, not relevant here. There are several things about *Yellow Freight* which are, however, awesomely relevant to a decision on Anderson Electrical's and Local 2601's motions to strike Walker's jury demand. The central holding, announced by the Supreme Court for the first time since Title VII was enacted in 1964, is that the state courts have concurrent jurisdiction over actions brought under Title VII. The reasoning which led to this ultimate conclusion throws considerable light on the separate but interconnected Title VII jury trial issue.

### First Point in *Yellow Freight*

Not necessarily in order of the importance of the various points made by the unanimous Supreme Court in *Yellow Freight*, the first relevant point is that for the 26 years since the enactment of Title VII the general assumption has been that the federal courts constitute the exclusive forum for Title VII cases. The Court in *Yellow Freight* mentions the fact that in 1980 the EEOC filed an *amicus curiae* brief contending "that federal courts have exclusive jurisdiction over Title VII actions." This court is reminded of the fact that the same EEOC filed an *amicus curiae* brief with this court in *Beesley*, contending that Title VII cases cannot be tried to a jury. This proves, of course, that governmental agencies, even those charged with specialized responsibilities, do not necessarily have superior knowledge of the principles of law which supposedly direct their actions.

### Second Point in *Yellow Freight*

A second important point in *Yellow Freight* is the unanimous Supreme Court's reliance on the absence of any language in Title VII placing jurisdiction over Title VII actions exclusively in the federal courts, despite the admitted fact "that most legislators, judges, and administrators who have been involved in the enactment, amendment, enforcement, and interpretation of Title VII expected that such litigation would be processed exclusively in the federal courts." 110 S.Ct. at 1567. In other words, conventional wisdom does not always equate with proper statutory construction and with correct constitutional interpretation.

### Third Point in *Yellow Freight*

The third concept prominently featured in this most recent reasoning by the Supreme Court, working in conjunction with the absence of express statutory language providing exclusivity of jurisdiction in the federal courts, is the eye which the Court cast upon the *Constitution* for guidance. The unanimous Court recognized the cruciality of the dual court system provided by the Constitution and held that state courts have jurisdiction over federal causes of action unless Congress "in an exercise of its powers under the Supremacy Clause, affirmatively divest[s] state courts of their presumptively concurrent jurisdiction." 110 S.Ct. at 1568. It goes without saying that the Constitution not only contains the Supremacy Clause mentioned in *Yellow Freight*, but the Seventh Amendment featured in *Local 391* and *Lytle*. Title VII is just as silent about who is to be the trier-of-fact as it is about which courts are to have jurisdiction. Looking to the Constitution to fill the void leads any reader directly to the Seventh Amendment.

### Fourth Point in *Yellow Freight*

*Yellow Freight* contains another idea which parallels and elucidates the question of whether or not juries can try Title VII cases upon appropriate demand. Since 1964, one of the chief arguments in favor of bench trials in Title VII cases is the alleged expertise of federal judges on these allegedly technically difficult issues, particularly issues which arguably should be insulated from regional prejudices by limiting their consideration to federal judges, who everyone recognizes to be both brilliant and absolutely impartial. This argument made no impression whatsoever on the Supreme Court in *Yellow Freight*. The court said in response to such an argument:

It may be assumed that federal judges will have more experience in Title VII litigation than state judges. That, however, is merely a factor that the plaintiff may weigh when deciding where to file suit, or that may motivate a defendant to remove a case to federal court. We have no reason to question the presumption that state courts are just as able as federal courts to adjudicate Title VII claims. *Cf. Kremer v. Chemical Construction Corp.*, 456 U.S. 461 [102 S.Ct. 1883, 72 L.Ed.2d 262] (1982) (state court decisions may have preclusive effect in Title VII cases before federal courts).

110 S.Ct. at 1570.

If a popularly elected Alabama judge can be trusted to try a Title VII case, why cannot a federal jury, picked from a randomly-selected pool of venirepersons, not subject to any unexplainable preemptory challenge, be likewise trusted? This was the central point made by this court in its first *Beesley* opinion.

### Fifth Point in *Yellow Freight*

Inasmuch as state court decisions may have preclusive effect in Title VII cases in federal courts, as pointed out in *Kremer*, cited in *Yellow Freight*, that same preclusive effect can surely be created by a state court's *jury* verdict. A month before the Supreme Court first held that Title VII cases can be filed in state courts, a district court decided that the Seventh Amendment mandates a jury trial of a statutory cause of action created by the legislature of the State of New Jersey if tried in federal court. In *Reiner v. State of New Jersey*, 732 F.Supp. 530 (D.N.J.1990), the district court, without access to *Yellow Freight* or to *Local 391* or to *Lytle*, found that a plaintiff who had invoked the New Jersey Law Against Discrimination, together with Title VII, was entitled to a jury trial of her New Jersey claims (which were "legal," although virtually identical to the remedies available in Title VII) because of the Seventh Amendment. This was *despite* the fact that the Supreme Court of New Jersey had earlier held that a cause under the said Act does not "entail the right to trial by jury." 732 F.Supp. at 530. The district

court there relied basically upon the same authorities which this court used in *Beesley* and *Walton*, and the same reasoning that the Supreme Court used in *Local 391* and *Lytle*, saying, *inter alia*:

So long as a legal cause of action is implicated and legal relief is authorized, the fundamental promise in the federal system is that a timely demand for a jury will be preserved.

\*   \*   \*   \*   \*   \*

The paramount promise of the Seventh Amendment must be preserved even at the predictable expense of time, money and efficiency.

In *Yellow Freight*, the Supreme Court said, simply and straightforwardly:

We do not find any incompatibility between the procedures provided in Title VII and state court jurisdiction over these claims.

110 S.Ct. at 1569. Did the Court forget to add the words "so long as the state courts do not employ juries"? Surely not, or the Court would have expressed such an obvious limitation.

If *Reiner* is correct, as this court thinks it is, and if *Reiner* is construed in conjunction with *Yellow Freight*, the conclusion which Anderson Electrical and Local 2601 would like for this court to reach, necessarily turning away from *Beesley* and *Walton*, is that a state-mandated cause of action designed to remedy sex or race discrimination carries a jury trial in a *federal* court under the Seventh Amendment, whereas a Title VII case tried in a *state* court cannot be tried to a jury even though that state's constitution, as well as the Seventh Amendment, mandates a jury trial of all claims seeking monetary relief. Such a conclusion cannot be reconciled with common sense, much less with the words clearly spoken by the drafters of the Seventh Amendment.

### The Significance of Rickel v. Commissioner of Internal Revenue

There is yet another recent case which adds to the groundswell of support for trial by jury in Title VII cases. It is *Rickel v. Commissioner of Internal Revenue*, 900

F.2d 655 (3rd Cir.1990). There, the Third Circuit was considering the income taxability of a recovery under the Age Discrimination in Employment Act. The complaint had asked that the employer be required to "pay back wages, benefits and other compensations found by the Court to be due plaintiff, together with interest thereon" and "an equal sum as liquidated damages." 900 F.2d at 657. The Internal Revenue Service had claimed that "gross income means all income from whatever source derived," that is, "unless the taxpayer can demonstrate that the accession is one of the specific exclusions created by other sections of the Internal Revenue Code." 900 F.2d at 657. The exclusion at issue provided:

> [G]ross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lumps sums or as periodic payments) on account of personal injuries or sickness ...

26 U.S.C. § 104(a)(2).

The Third Circuit found that "personal injuries ... encompasses both non-physical as well as physical injuries." The court went on to find that ADEA damages, which admittedly cannot include injury to the taxpayer's business or his professional reputation, but only permit a recovery for economic loss, is nevertheless in the nature of a *personal injury* and thus excludable from "gross income." This, of course, means that the Third Circuit was categorizing the back wages and benefits recoverable under ADEA (the same items recoverable under Title VII) as "personal injuries." Personal injuries call for "compensatory damages" and not for "equitable remedies." A mandatory injunction by the mightiest federal court cannot restore an arm or a leg. To put icing on the cake, the Third Circuit relied on 26 C.F.R. 1.104–1(c), which speaks in terms of an "amount received ... through prosecution of a *legal* suit or action based upon tort or tort-type rights ..." (emphasis supplied). The court concluded with this telling remark:

We are strengthened in our conclusion by courts in other jurisdictions that have characterized *an action to redress discrimination in the work place as a tort claim for personal injuries whether the discrimination was based on race ... sex ... or age.*

(emphasis supplied) (citations omitted).

It is unthinkable that a judge using any one of the approaches taken by the various Justices in *Local 391* and *Lytle* could agree with the Third Circuit and yet find that a *"tort claim for personal injuries"* is "historically equitable" and thus limited to bench trial resolution.

### Another Switch–Hitter

This court pointed out in *Walton* that counsel for plaintiff's employer in that case had, in another case, relied on *Beesley* in support of a plaintiff's demand for a jury to try a federal statutory cause of action. 733 F.Supp. at 329–30, n. 2 and n. 3. The drama in *Walton* was somewhat lessened by the fact that the other case did not involve Title VII. However, it now appears that counsel for Local 2601 in the present case, who is opposing plaintiff's jury demand, did himself on April 19, 1990, demand a trial by struck jury on behalf of a plaintiff in a Title VII case before this very court.[2] This court takes comfort in the belief that counsel for Local 2601 would not knowingly lead this court into error. Perhaps between November 15, 1989, the date upon which Local 2601 filed its current motion to strike Walker's jury demand in a Title VII case, and April 19, 1990, when Local 2601's counsel filed his jury demand on behalf of a client-plaintiff in a Title VII case, counsel absorbed the truths in *Walton* and *Yellow Freight,* but, in the name of camaraderie, cannot bring himself to part ways from counsel for Anderson Electrical, who have never filed a jury demand in a Title VII case, unless, perhaps, during the few years after 1964 before the "conventionally wise" obtained ascendancy.

**2.** *See Reynolds v. Colbert County Board of Education,* CV 90–AR–0604–NW.

### The Timeliness of Walker's Jury Demand

Walker's original jury demand admittedly was limited to her pendent state claims. Her jury demand for Title VII claims was untimely according to the limitation provided in Rule 38(b), F.R.Civ.P. However, Rule 39(b), F.R.Civ.P., provides:

> [N]otwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

It would make little sense to try Walker's pendent state claims for invasion of privacy and/or outrage to a jury and not simultaneously try her Title VII claim, particularly when even this court did not recognize jury trials for Title VII cases when Walker filed her complaint. The *trial* court in *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.1990), tried a Title VII claim to a jury in conjunction with admittedly jury triable claims, and there was no appellate complaint about it. It is understandable that when Walker's complaint was filed her counsel could not predict *Local 391, Lytle, Walton* and *Yellow Freight.* Thus, in an exercise of this court's discretion, and consistent with the foregoing discussion, and consistent with this court's earlier opinions in *Beesley* and *Walton,* defendants' motions to strike plaintiff's belated demand for a jury trial of her Title VII claims will, by separate order, be denied.

### ADDENDUM TO MEMORANDUM OPINION OF APRIL 27, 1990

It has been pointed out to the court that Constitution Avenue, referred to on page 3 of this court's memorandum opinion of April 27, 1990, is a short block away from the Supreme Court Building, which faces on First Street in Washington, D.C. This court's excuse, if there is one, for suggesting that "Constitution Avenue" is associated with the Supreme Court, is not that the Constitution is inexorably intertwined with the Supreme Court but that the Supreme Court spoke so loudly in *Yellow Freight* that that Court could be heard at least a short block away. This court heard the

Supreme Court from a distance of 800 miles, even though if this court had been situated on Acker Street in Washington, D.C., it would have been within legitimate shouting distance of the Supreme Court.