Lynn **CORTES,** Plaintiff,

v.

**R.I. ENTERPRISES, INC., R.I. Associates, Jerry and Frances Warsky, all defendants d/b/a Cristallo Steak House and Jasmine's Lounge,** Defendants.

No. CIV. A. 3:99–CV–1339.

United States District Court, M.D. Pennsylvania.

April 18, 2000.

---

Susan E. Stokes, Sprenger & Lang, Minneapolis, MN, Michael D. Lieder,

Sprenger & Lang, Washington, DC, Joseph T. Wright, Jr., Wright & Associates, Scranton, for Lynn Cortes, plaintiff.

Alexia Kita Blake, Hourigan Kluger Spohrer & Quinn, PC, Morey M. Myers, Donna A. Walsh, Myers Brier & Kelly, LLP, Scranton, Daniel Thomas Brier, Myers Brier & Kelly, LLP, for R.I. Enterprises, Inc., R.I. Associates, defendants.

## MEMORANDUM

CAPUTO, District Judge.

Plaintiff, Lynn Cortes, commenced this action with the filing of a complaint alleging sexual harassment, on July 28, 1999. The complaint asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and under the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Stat. Ann. § 951, *et seq.*

Presently before the Court are the motions, filed November 9, 1999, of defendants R.I. Associates and Jerry and Frances Warsky to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), and of Defendant R.I. Enterprises, Inc. for Partial Dismissal of Plaintiff's Complaint or, in the Alternative, Motion to Strike. (Docs. 3 & 4.) Although the defendants have filed two separate motions, the memorandums filed in support of the motions advance identical arguments which warrant unified discussion in this Memorandum Opinion.[1] The motions will be granted in part and denied in part as set forth below.

## I BACKGROUND

In a light most favorable to the plaintiff, the pertinent facts alleged in the complaint are as follows. Plaintiff, a woman in her twenties, was employed as a waitress at the Ramada Plaza Hotel in Clarks Summit, Pennsylvania, from April until August 1995 and again during part of the summer

---

1. R.I. Associates and Jerry Frances Warsky simply joined in with and incorporated by reference the arguments set forth in the memorandums of law filed by defendant R.I. Enterprises, Inc.

of 1996. The restaurant and bar at the hotel where she worked were known, respectively, as Cristallo Steak House and Jasmine's Lounge.

## A. Parties

Defendant R.I. Associates was plaintiff's employer. The complaint alleges that defendants Jerry and Frances Warsky were also plaintiff's employer; they were the sole partners of R.I. Associates during the relevant time period and also the sole shareholders of R.I. Enterprises, Inc., which entity operated Cristallo Steak House and Jasmine's Lounge. The complaint further alleges that defendant R.I. Enterprises, Inc., a Pennsylvania corporation, was operated solely as a shell corporation to protect R.I. Associates and Jerry and Frances Warsky from liability.

## B. Procedural History

On or about March 26, 1999, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The charge was assigned a charge number and plaintiff received a notice of Right to Sue from the EEOC dated April 30, 1999. Under the work-sharing agreement between the EEOC and the Pennsylvania Human Relations Commission ("PHRC"), plaintiff's charge was automatically cross-filed with the PHRC.

Plaintiff's lawsuit was preceded by two related actions, brought by other former waitresses at the Ramada Inn's restaurant and bar. On September 6, 1995, Jessica Hoffman filed an EEOC charge against the defendants named herein, alleging sex discrimination, sexual harassment and retaliation. She amended that charge on May 5, 1996 and filed a federal complaint, captioned *Jessica Hoffman, and all others similarly situated v. R.I. Enterprises, Inc. d/b/a Ramada Inn, d/b/a/ Cristallo Steak House* (M.D.Pa.Civ.A. No. 3:96–CV–1956) pursuant to that EEOC charge on November 1, 1996. A motion for class certification was denied by the district court on February 2, 1999.

Connie Bailey filed an EEOC charge on January 28, 1997 alleging class-wide sexual discrimination, sexual harassment and retaliation against the defendants named herein and others. Plaintiff subsequently filed a complaint in federal court, captioned *Connie Bailey, on behalf of herself and all others similarly situated v. R.I. Enterprises, Inc. R.I. Associates, Jerry and Francis Warsky, Ramesh T. Joshi and Ketan R. Joshi, all defendants d/b/a Ramada Plaza Hotel D/B/A Cristallo Steak House and Jasmine's Lounge* (M.D.Pa.Civ.A. No. 3:97–CV–1036).

## C. Discriminatory Practices

Plaintiff alleges that she was subjected to a continuous pattern of gender discrimination, sexual harassment, and retaliation throughout the entire period of her employment at defendants' premises. She alleges that defendants' supervisors and managers created and condoned a work environment that was hostile to plaintiff and other female employees. Male employees, allegedly with the knowledge of management, made vulgar, obscene, threatening, demeaning and discriminatory statements to plaintiff and other women because of their sex. Plaintiff alleges that she and other women were subjected to unwelcome verbal and sexual advances and that defendants retaliated against plaintiff and other women for refusing to acquiesce to these unwelcome demands and/or for complaining about the conduct.

Plaintiff alleges that she was forced to leave her job in August 1995 because she could no longer withstand the hostile work environment created and condoned by Restaurant Manager Richard Wolf, Chef Scott Hastings, Hotel Manager Chris Deegan, and other male employees, and because she felt especially vulnerable and unable to cope with this work environment as a pregnant woman. She alleges that she was healthy and would have remained at work through her pregnancy but for the

allegedly sexually hostile work environment.

Plaintiff returned to work about one year after she left, after learning that Wolf was no longer the restaurant manager and that Hastings was no longer the chef. Plaintiff left her job at the Ramada again when she learned that Wolf would be returning from a leave of absence in the fall. The complaint states that plaintiff left her employment approximately two weeks before Wolf was scheduled to return to his position, and that if management had not allowed Wolf to return, plaintiff would have remained in her job at the restaurant.

## II  DISCUSSION

### A.  Standard of Review

Defendants bring their motions pursuant to Federal Rules of Civil Procedure 12(b)(6) (to dismiss) and 12(f) (to strike).

### 1.  Fed.R.Civ.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In deciding a 12(b)(6) motion, the court must view all allegations made in the complaint as true and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). Furthermore, " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The court is not, however, required to credit or lend credence to " 'bald assertions' " or " 'legal conclusions.' " *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Securities Litiga-* *tion,* 114 F.3d 1410, 1429–30 (3d Cir.1997)). In ruling on a Rule 12(b)(6) motion, courts can and should reject " 'legal conclusions,' " " 'unsupported conclusions,' " " 'unwarranted inferences,' " " 'unwarranted deductions,' " " 'footless conclusions of law,' " and " 'sweeping legal conclusions in the form of factual allegations.' " *Id.* at 906 n. 8 (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *FEDERAL PRACTICE AND PROCEDURE,* § 1357 (2d ed.1997)). In addition, " 'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); *See also Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449–50 (M.D.Pa.1991).

### 2.  Fed.R.Civ.P. 12(f)

Federal Rule of Civil Procedure 12(f) provides that the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

### B.  Analysis

Defendants move the Court to dismiss plaintiff's claim for relief under the PHRA because, they assert, Cortes failed to exhaust her administrative remedies as required by the PHRA. In the alternative, defendant R.I. Enterprises, Inc. moves to strike plaintiff's request for punitive damages and demand for a jury trial under the PHRA. Defendants also move the Court to dismiss portions of plaintiff's complaint brought under Title VII falling outside the applicable statute of limitations because, they assert, these claims are not timely under the statute of limitations and are not covered by the continuing violation theory.

### 1.  Timely Exhaustion of Administrative Remedies under the PHRA

Defendants argue that the Court should dismiss plaintiff's PHRA claim because plaintiff failed to timely exhaust her administrative remedies under the PHRA.

The PHRA mandates that "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination ...." 43 P.S. § 959(h); *see also* 16 Pa. Code § 42.14 ("The complaint shall be filed within 180 days from the occurrence of the alleged unlawful discriminatory practice ....") In this case, it is undisputed that plaintiff filed her charge of discrimination on March 26, 1999, more than two and one half years after the last alleged discriminatory act, which occurred no later than September 1, 1996, the date on which plaintiff terminated her employment with R.I. Enterprises. Defendants argue that because plaintiff filed her charge more than 180 days after the alleged discrimination ended, her claims under the PHRA must be dismissed.

■ Plaintiff does not dispute defendants' chronology, yet she argues, citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), that the statute of limitations was tolled either by the filing of the complaint in the earlier lawsuit brought by Jessica Hoffman, or by the charge filed by Connie Bailey. Defendants reply that plaintiff's reliance on *American Pipe* is misplaced because Hoffman did not raise class claims in her EEOC/PHRC charge and because the district court in the *Hoffman* litigation denied class certification on the ground that Hoffman's EEOC/PHRC charge was an individual rather than class action. I agree with the plaintiff that the filing of the complaint in *Hoffman* tolled the statute of limitations. It is not relevant that the district court ultimately denied class certification. *American Pipe* holds that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class *who would have been parties had the suit been permitted to continue* as a class action". *American Pipe*, 414 U.S. at 553, 94 S.Ct. 756 (emphasis added). In this case, plaintiff clearly would have been a party in the Hoffman action if that suit had been permitted to continue as a class action. The filing of the Hoffman action thus tolled the statute of limitations for plaintiff and other members of the Hoffman class. This result, interpreting "commencement of a class action" as encompassing the filing of a complaint in federal court (rather than fixing "commencement" strictly at the time of the filing of the charge) is consistent with the notice rationale underlying *American Pipe:*

> [S]tatutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber .... The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of the limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'... The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights' ... are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation ....

*Id.* at 554–55. When Jessica Hoffman filed her action in federal court under the caption *Jessica Hoffman, and all others similarly situated v. R.I. Enterprises, Inc. d/b/a Ramada Inn, d/b/a/ Cristallo Steak House*, defendants received notice of the possibility that a lawsuit could be brought by any of the putative plaintiffs in the action. The putative plaintiffs for their part, may have delayed filing an action pending the decision on class certification

in *Hoffman*. Defendants' position on commencement, emphasizing the wording of the charge, asks too much of putative plaintiffs. Under defendants' view of commencement, a would-be plaintiff would have to examine the EEOC/PHRC charge to determine whether it was filed as a class action, before determining whether to wait or bring an action of her own. Such a putative plaintiff would not be able to rely on the filing of a federal complaint styled as a class action as a tolling mechanism, and would be well advised to file her own action, contrary to the policy of *American Pipe* to promote "efficiency and economy of litigation." *Id.* at 553, 94 S.Ct. 756. I therefore hold that the filing of the *Hoffman* complaint in federal court tolled the statute of limitations in the present action, which I find was timely filed.[2] I need not address plaintiff's alternative argument that the statute of limitations was tolled by the *Bailey* action.

### 2. Request for Punitive Damages under the PHRA

Defendants contend that if plaintiff's claim under the PHRA is not barred by failure to timely exhaust administrative remedies, the Court must strike plaintiff's request for punitive damages, because such damages are not available in actions brought under the statute. I agree. The question was conclusively resolved by the Pennsylvania Supreme Court in *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 751 (1998) ("In the absence of express statutory language or any further legislative guidance, we hold that punitive damages are

not available under the Act."). Hence, plaintiff's demand for punitive damages under the PHRA must be stricken as a matter of law.

### 3. Demand for Jury Trial under the PHRA

The question of whether plaintiff is entitled to a jury trial on her PHRA claim is more difficult to resolve. As defendant rightly notes, the Supreme Court of Pennsylvania recently ruled that there is no right to a jury trial in employment discrimination cases brought under the PHRA. *Wertz v. Chapman Twp.*, 559 Pa. 630, 741 A.2d 1272, 1279 (1999) ("We find that the legislature did not intend for a plaintiff to have a right to a trial by jury for claims under the PHRA."). The Pennsylvania Supreme Court's ruling, however, does not dispose of the question of whether a jury trial under the PHRA is required in federal court. *See Lubin v. American Packaging Corp.*, 760 F.Supp. 450, 453–54 (E.D.Pa.1991) (holding that even if federal court were to determine that the Pennsylvania legislature did not intend plaintiffs to have a right to a jury trial under the PHRA, the court's analysis could not end there); *Reiner v. New Jersey*, 732 F.Supp. 530, 534 (D.N.J.1990) (holding that even though New Jersey Supreme Court found that antidiscrimination law did not entitle party to jury trial in state court, jury trial was still provided as matter of right in federal court).

The Court of Appeals for the Third Circuit set forth the analytical framework for

---

**2.** Cortes's statute of limitations had run from September 2, 1996, the day after the last discriminatory act on September 1, 1996, through October 31, 1996, the day before Hoffman's complaint containing class allegations was filed, and then was tolled by .the *Hoffman* complaint. Thus, sixty days of her statute of limitations had expired when her statute of limitations ceased running due to Hoffman's federal court complaint alleging class-wide discrimination. When Hoffman's motion for class certification was denied on February 2, 1999, Cortes's statute of limitation began running again. Thereafter, 52

days of her statute of limitations ran between February 3, 1999 and March 26, 1999 when Cortes filed her EEOC charge (which was automatically cross-filed with the PHRC). In total, then, because Hoffman's federal complaint tolled Cortes's statute of limitations, Cortes timely filed her EEOC charge (and PHRA charge) within 112 days of the last discriminatory act on September 1, 1999, meeting the 300–day filing requirement under Title VII and the 180–day requirement under the PHRA. 42 U.S.C. § 2000e–5(e)(1); 43 P.S. §§ 959(h), 962.

determining whether the plaintiff is entitled to a jury trial under a particular statute in *Cox v. Keystone Carbon, Co.*, 861 F.2d 390, 392–93 (3d Cir.1988). As the *Cox* court explained, this Court's analysis must begin with an examination of the language and legislative history of the statute, to assess whether the legislature intended to create a right to jury trial under the statute. *Id.*, 861 F.2d at 393 (quoting *Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). If statutory analysis does not reveal an intent on the part of the legislature to provide the right to jury trial, the Seventh Amendment to the United States Constitution "must be examined to determine if it commands that a jury trial be provided." *Id.*, 861 F.2d at 393.

### a. Legislative Intent

In *Wertz v. Chapman, supra*, the Supreme Court of Pennsylvania faced the issue of whether Pennsylvania's General Assembly intended that a jury trial be provided upon demand under the PHRA, and concluded that the legislature did not envision such a right. *Wertz*, 741 A.2d at 1273. The supreme court noted that the statute itself is silent as to the right to trial by jury. *Id.* at 1274. However, the supreme court found the General Assembly's use of the term "court" in the statute significant: "The statute states that 'If the *court* finds that the respondent has engaged in or is in engaging in an unlawful discriminatory practice charged in the complaint, the *court* shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting back pay, or any other legal or equitable relief as the *court* deems appropriate.'" 43 P.S. § 962(c) (emphasis supplied). This is strong evidence that under the PHRA, "it is a tribunal, rather than a jury, that is to make findings and provide relief." *Id.* Examining the legislative history of the PHRA, the supreme

court found that it failed to provide any indication that the General Assembly intended for a plaintiff to have a right to a jury trial. *Id.* The supreme court disposed of the argument that the PHRA's provision for monetary damages ("legal … relief") necessarily implied a legislative intent to make jury trial available, noting that an award of legal relief incidental to or intertwined with injunctive relief may be equitable. *Id.* at 1275. In conclusion, the supreme court stated: "Based upon the legislature's silence on the issue of the availability of a jury trial, together with the affirmative use of the term 'court,' and the lack of any legislative history to the contrary, we conclude that the General Assembly did not intend for a plaintiff to have a right to trial by jury for claims under the PHRA." *Id.*

### b. Seventh Amendment

Because the Supreme Court of Pennsylvania has concluded that the Pennsylvania General Assembly did not intend for plaintiffs to have a right to a jury in PHRA actions, this Court now must determine whether the Seventh Amendment mandates that a jury trial be provided upon demand. *See Cox*, 861 F.2d at 393; *Lubin*, 760 F.Supp. at 454.

The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved …." U.S. Const. amend. VII. The United States Supreme Court has interpreted the Amendment to require a jury trial on the merits in those actions that are analogous to "Suits at common law." *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). These have been held to include actions enforcing statutory rights. *Curtis v. Loether*, 415 U.S. 189, 192–94, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Thus, the Seventh Amendment applies to actions enforcing statutory rights, and requires a jury trial upon demand, if

the statute creates legal (as opposed to equitable) rights and remedies, enforceable in an action for damages in the ordinary courts of law. *Id.* at 194, 94 S.Ct. 1005; *see also Tull,* 481 U.S. at 417–18, 107 S.Ct. 1831.

In *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), the Supreme Court set forth a two-part analytical framework for determining whether a statutory cause of action creates legal or equitable rights and remedies. 494 U.S. at 564–65, 110 S.Ct. 1339. " 'First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.' " *Id.* (quoting *Tull,* 481 U.S. at 417–18, 107 S.Ct. 1831). The Court deemed the second inquiry to be the more important one. *Chauffeurs,* 494 U.S. at 565, 110 S.Ct. 1339.

The 18th-century courts of England did not recognize a cause of action for discriminatory employment practices. *See Lubin,* 760 F.Supp. at 454–55. Nevertheless, insofar as the PHRA can be generally analogized to a combination of actions in tort and contract, pre-Seventh Amendment common law required a jury trial in such actions. *See Id.* (citing C. Wright, The Law of Federal Courts, p. 610 (4th ed.1983)).

Turning to the second part of the analysis, I consider whether the remedy sought is legal or equitable in nature. As made clear in her prayer for relief, plaintiff seeks remedies that are both equitable, e.g. back pay, and legal, e.g. compensatory damages. (Doc. 1, plaintiff requests "back pay and front pay, compensatory and punitive damages, and damages for past and future mental anguish, pain and suffering and for liquidated damages" and "such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable."); *Chauffeurs,* 494 U.S. at 572, 110 S.Ct. 1339 (acknowledging back pay as equitable relief); *Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 138 (3d Cir.1986) (holding compensatory damages constitute legal remedy).

■    Since the plaintiff seeks a determination of legal rights *vis a vis* the defendants, and because she seeks a legal remedy for the alleged violation of those rights, the Court holds that plaintiff establishes entitlement, under the Seventh Amendment, to jury trial in federal court on her legal claims brought under the PHRA.[3] Non-legal, i.e., equitable claims, will be tried to the Court. *Wertz,* 741 A.2d at 1279.

### 4. Title VII (and the PHRA): Do the Two Periods of Alleged Harassment Constitute a "Continuing Violation"?

The defendants argue that the incidents which occurred during her original period of employment between April and August 1995 fall without the statute of limitations and are therefore not actionable. Specifically, defendants ask the Court to dismiss without prejudice plaintiff's allegations under Title VII which pre-date the 300 day limitations period under the statute. Plaintiff responds that these earlier incidents of sexual harassment, sex discrimination, and retaliation are part of defendants' overall pattern and practice of permitting and condoning such behavior. As such, she argues, they are part of a continuing violation engaged in by defendants. Defendants counter

---

**3.** The Court observes that plaintiff's claims for equitable relief, joined with her claims for legal relief, do not negate her Seventh Amendment right to jury trial. *See Curtis,* 415 U.S. at 196 n. 11, 94 S.Ct. 1005 ("[I]f a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought.") (internal quotation marks omitted).

that plaintiff's resignation and subsequent return to work in 1996 under admittedly different and improved conditions preclude application of the continuing violation theory to the alleged discriminatory acts occurring in 1995. The Court concurs with defendants that the two periods of alleged harassment do not constitute a continuing violation.

■ The continuing violation theory provides an equitable exception to the timely filing requirement. *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995). Under this theory, the plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant. *Id.* Courts have also applied the continuing violation theory in the PHRA context. *See, e.g., Carter v. Phila. Stock Exchange*, No. Civ.A. 99–2455, 1999 WL 715205, at *2, (E.D.Pa. August 25, 1999); *Glickstein v. Neshaminy Sch. Dist.*, No. Civ.A. 96–6236, 1997 WL 660636, at *10 (E.D.Pa. October 22, 1997). In *West* the Third Circuit declined to adopt a *per se* rule that a properly alleged hostile work environment claim also constitutes a continuing violation. *West*, 45 F.3d at 755. Rather, the Court of Appeals held that to establish that a claim falls within the continuing violation theory, the plaintiff must establish first, that at least one act occurred within the filing period, and second, that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *Id.* at 755. The court held that "the relevant distinction is between the occurrence of isolated intermittent acts of discrimination and a persistent, on-going pattern" and suggested that an inquiry should consider: (i) subject matter-whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence-whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences

of the act would continue even in the absence of a continuing intent to discriminate. *Id.*

The *West* case involved a continuous period of racial harassment in the workplace over a period of years. *Id.* The court observed that "[t]he postings, threats, and hostile conversations appear to have recurred without respite." *Id.* at 755–56. In deciding to apply the continuous violation theory in *West*, the court noted in closing that "the harassment did not cause a discrete event such as a job lost or a denied promotion and, thus, it did not trigger a duty of the plaintiff to assert his rights arising from that deprivation." *Id.* at 756.

■ Applying *West* to the case at hand, I find that plaintiff has not alleged a continuous violation because the earlier alleged violations did trigger a discrete event-plaintiff's leaving her job for a year due to sex discrimination-which in my view triggered a duty on the part of the plaintiff to assert her rights. This holding is consistent with other case law. For example, in *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir.1997), *cert. denied*, 522 U.S. 1128, 118 S.Ct. 1079, 140 L.Ed.2d 137 (1998), the Third Circuit held that a seven-month gap in returning to work allowed the effects of earlier discrimination to dissipate. *Konstantopoulos*, 112 F.3d at 716. *See also Stilley v. Univ. of Pittsburgh of the Commw. Sys. of Higher Educ.*, 968 F.Supp. 252, 263 (W.D.Pa.1996) (break in employment and subsequent return to work under improved working conditions obviated claim of continuing violation). *Burns v. McGregor Industries, Inc.*, 955 F.2d 559 (8th Cir.1992), and *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568 (8th Cir.1997), cited by plaintiff, are not authority to the contrary. Neither case involves an interim between alleged incidents that even approaches one year. In *Burns*, the lapses between periods of employment were held not to obviate a continuing violation because the court characterized them as "short": five weeks and three months.

*Burns,* 955 F.2d at 563. In *Kimzey,* the only interruption in employment was a brief, temporary leave of absence which plaintiff therein took to care for her sick mother. *Kimzey,* 107 F.3d at 570. In sum, I find that plaintiff's decision to terminate her employment and her subsequent return to work a year later under improved circumstances evidence a lack of continuity. Accordingly, I hold that plaintiff's Title VII claims for relief relating to her first period of employment are time-barred. Defendants' motions will therefore be granted in that plaintiff's Title VII claims will be dismissed to the extent that the claims seek relief for the alleged discriminatory acts occurring in 1995. Although defendants' timeliness objection is addressed only to plaintiff's Title VII claims, an identical outcome with respect to plaintiff's PHRA claims is appropriate.

## III  CONCLUSION

In conclusion, the motions of defendants R.I. Associates and Jerry and Frances Warsky to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), and of Defendant R.I. Enterprises, Inc. for Partial Dismissal of Plaintiff's Complaint or, in the Alternative, Motion to Strike will be granted in part and denied in part as follows. The Court will not dismiss plaintiff's PHRA claim for failing to timely file an administrative charge. Plaintiff's demand for punitive damages under the PHRA will be stricken; plaintiff's demand for jury trial of her claims under the PHRA will be preserved to the extent that the Seventh Amendment to the United States Constitution permits jury trial. Plaintiff's claims for relief relating to her first, 1995 period of employment (including both those brought under Title VII and the PHRA) are time-barred and will be dismissed.

### ORDER

NOW, this _____ day of April, 2000, it is hereby ORDERED that:

1. Defendant R.I. Enterprises, Inc.'s Motion for Partial Dismissal of Plaintiff's Complaint or, in the Alternative, Motion to Strike (Doc. 4) is granted in part and denied in part with the result that:

a. Plaintiff's demand for punitive damages under the PHRA is STRICKEN.

b. Defendant's motion to strike plaintiff's demand for jury trial on her claims under the PHRA is DENIED to the extent that the Seventh Amendment to the United States Constitution permits jury trial.

c. Plaintiff's Title VII and PHRA claims against defendant, to the extent that they seek relief for the alleged discriminatory acts occurring in 1995 (during plaintiff's first period of employment), are DISMISSED.

2. Defendants R.I. Associates' and Jerry and Frances Warsky's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) (Doc. 3) will be granted in part and denied in part as follows:

a. Plaintiff's Title VII and PHRA claims against defendants, to the extent that they seek relief for the alleged discriminatory acts occurring in 1995 (during plaintiff's first period of employment), are DISMISSED; in all other respects the motion is DENIED.