**Carlos BOZEMAN, Plaintiff,**

v.

**SLOSS INDUSTRIES CORPORATION, et al., Defendants.**

**Civ. A. No. 91–AR–0915–S.**

United States District Court,
N.D. Alabama, S.D.

Sept. 5, 1991.

Naomi Hilton Archer, Gordon Silberman Wiggins & Childs, Birmingham, Ala., for plaintiff.

James P. Alexander, Anne Regina Yuengert, Bradley Arant Rose & White, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

This is a case in which plaintiff, Carlos Bozeman, a black man, invokes Title VII and claims that because of his race he was discharged by his employer, Sloss Industries Corporation, the defendant. In an exercise of the discretion granted by Rule 39(c), F.R.Civ.P., this court "of its own initiative" (the language of the Rule), ordered the case tried with an advisory jury. Sloss promptly moved for reconsideration and for the vacation of the order providing for an advisory jury.

Sloss makes three arguments. First, Sloss points out that despite any advice the jury might give, this court must still make its own findings of fact. Second, Sloss asserts "that a trial to jury will not contribute to the efficient and economical resolution of this dispute...." Third, Sloss says:

> More importantly, juries, as observed by another judge of this Court in the context of age discrimination, tend to be susceptible to arguments that an employment decision was unfair rather than whether a decision was in fact impermissibly motivated by race. That is, the juries' sympathy, and perhaps prejudice will likely lie with plaintiff.

This court readily acknowledges that it does not have to take an advisory jury's advice. If there had ever been any doubt about this proposition, that doubt was eliminated by *Newmann v. United States*, 938 F.2d 1258 (11th Cir.1991), in which the trial court was being reviewed in a Federal Tort Claims Act medical malpractice case in which it had empaneled an advisory jury which found for the government. The evidence was in dispute. The trial judge promptly ignored the jury's advice, made his own findings, and entered judgment for the plaintiff-patient and against the United States in the amount of $1,674,495.00, which is a pretty good distance above the zero recommended by the jury. Without much ado, the trial court was affirmed by the Eleventh Circuit. Similarly, an advisory jury in the instant case, if it hears the conflicting evidence this court fully anticipates, may find that Sloss was entirely innocent of racial discrimination; but this court would be able to ignore that finding and to substitute its own conclusions, making entirely different credibility assessments. This is always true when an advisory jury is employed, so there is nothing new in Sloss' argument on this point.

While necessarily conceding that Rule 39(c) says what it says, Sloss nevertheless cites an old Fourth Circuit *dictum* which, if believed, would limit the trial court's discretion to empanel an advisory jury in a Title VII case. Neither the old Fifth Circuit nor the Eleventh Circuit has ever subscribed to what the Fourth Circuit volunteered in *Moss v. Lane Company, Inc.,* 471 F.2d 853, 855 (4th Cir.1973), namely:

> We feel it appropriate to observe, however, that, as we stated in *Cox v. Babcock and Wilcox Company*, 4 Cir., 471 F.2d 13, the use of advisory juries in *discrimination cases* is not favored, however broad the language of Rule 39(c) may be deemed, and should be restricted in any event to the exceptional case where there are peculiar and unique circumstances supporting its use.

(emphasis supplied).

If this were binding precedent, it would control "discrimination cases" brought un-

der 42 U.S.C. §§ 1981 and 1983 as well as under Title VII. The Fourth Circuit has not enlightened its readers as to what constitutes the "peculiar and unique circumstances" which can support the use of an advisory jury in "discrimination cases". The truth is that *Moss* is no more than a good illustration of the federal judiciary's early distrust of juries for the resolution of racial discrimination disputes under the Civil Rights Act of 1964, a distrust which lingers until this day in some courts. This court is not bound by *Moss* and respectfully disagrees with the Fourth Circuit if that court still believes what it said in 1973.

Sloss is, of course, familiar with this court's hopes for a recognition of Seventh Amendment applicability to Title VII cases in which backpay is an element of the relief sought. The Eleventh Circuit has disagreed as strongly with this court on the jury triability of Title VII cases as this court disagrees with the Fourth Circuit's *dictum* in *Moss*. The Supreme Court is presently being asked to resolve this respectful difference of opinion in a petition for writ of certiorari addressed to the Eleventh Circuit in *Walton v. Cowin Equipment Co.*, Supreme Court No. 90–1969. This court's deviant beliefs on this subject are the subject of a comprehensive article in 39 *Journal of Urban and Contemporary Law* 135, titled "Judge Acker's Last Stand: The Northern District of Alabama's Lonesome Battle for the Right to Trial by Jury under Title VII", and those beliefs are shared by Hon. Charles L. Brieant, Chief Judge, Southern District of New York, as recently reflected in *Linares v. City of White Plains*, 773 F.Supp. 566 (S.D.N.Y.1991). Chief Judge Brieant's opinion is worthwhile reading.

This court gets the feeling that Sloss means to hint that this court is trying to get the "last laugh" instead of to make a "last stand". If this idea is implicit in Sloss' motion, the court feels no need to admit anything except its continued hope for the Seventh Amendment. This court further admits feeling warm and comfortable with a jury in the box. The possibility surely exists that this case will take longer and will be more expensive to try with an advisory jury than without an advisory jury. Nevertheless, a very good argument, based on empirical data, can be made that jury cases are more often settled than non-jury cases. Why? Because the judge is active in settlement efforts when he will not be the ultimate factfinder. He must be much more reticent in non-jury cases. In fact in non-jury cases he is a virtual non-participant in the settlement process. The fact is that the jury device may actually contribute to judicial economy rather than to subtract from it. But economy is not the controlling criterion. This court does not labor under the illusion that it possesses more wisdom than a jury or that it has a greater sense of fairness than a jury. The only possible "last laugh" the court could envision having in this case would be a scenario in which the jury finds for Sloss, but the court nevertheless feels compelled to reject the jury's finding and to rule for Bozeman. The percentages may be against it, but the rules allow it. Of course, if the Supreme Court should ultimately agree with this court on the larger question of jury trial entitlement in Title VII backpay cases, this court at that time might slip up and display a Mona Lisa smile, which would certainly be better than to be known as the judge who took the "last stand".

Sloss' final suggestion that juries are generally prejudiced against employers is belied both by the jury outcome in *Walker v. Anderson Elec. Connectors*, 736 F.Supp. 253 (N.D.Ala.1990) and 742 F.Supp. 591 (N.D.Ala.1990), and by the August, 1991 edition of "FOR THE DEFENSE" published by Defense Research Institute, a lawyer group not known for plaintiff bias. This most recent issue of "FOR THE DEFENSE" contains a full-page Letter to the Editor from Hon. Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana. There Judge Sharp says, *inter alia:*

On the matter of juries, I like the somewhat romantic statement of G.K. Chesterton, published early this century in a piece which he called *Twelve Men:*

Our civilization has decided, and very justly decided, that determining the guilt or innocence of men is a thing too important to be trusted to trained men. If it wishes for light upon that awful matter, it asks men who know no more law than I know, but who can feel the things that I felt in the jury box. When it wants a library catalogued, or the solar system discovered, or any trifle of that kind, it uses up its specialists. But when it wishes anything done which is really serious, it collects twelve of the ordinary men standing round. The same thing was done, if I remember right, by the Founder of Christianity.

\* \* \* \* \* \*

While the jury system under the Sixth and Seventh Amendments is far from perfect, it is a civil and fundamentally important way to resolve disputes. *I guess I have been a judge too long and know too many judges to think that in the important processes of determining believability and credibility and weighing evidence, that judges are any better at it than jurors. I have always believed that in regard to this very human function of the jury, that jurors bring to the task a freshness that few judges can have, since we have listened to hundreds of arguments and thousands of witnesses.*

\* \* \* \* \* \*

Please keep providing me and other judges with your excellent publication.

(emphasis supplied).

This expression is not dissimilar to what Professor Charles Alan Wright says in his Hornbook, *Law of Federal Courts* (1983), § 92, "The Right to Jury Trial", p. 606, viz:

The right of trial by jury is of ancient origin. To Blackstone it was "the glory of the English law" and "the most transcendent privilege which any subject can enjoy." In Justice Story's view "the Constitution would have been justly obnoxious to the most conclusive objection it if had not recognized and confirmed it in the most solemn terms." The Su-

preme Court itself has voiced similar eulogies to the jury.

Today these views are not universally accepted. Assertions are made that trial by jury is "expensive and dilatory—perhaps anachronistic." In federal courts, at least, the Seventh Amendment writes into the basic charter the belief that trial by jury is the normal and preferable mode of disposing of issues of fact in civil cases involving legal relief as well as in criminal cases. Despite the critics, there is still a general professional view that maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to jury trial should be scrutinized with the utmost care. The Supreme Court has been zealous to safeguard, perhaps even to enlarge, the function of the jury.

(footnotes omitted).

This court thoroughly agrees both with Chief Judge Sharp and with Professor Wright and refuses to believe that a jury, carefully struck from a randomly selected jury pool in the Northern District of Alabama, would be unduly sympathetic toward an employee-plaintiff or unduly prejudiced against an employer-defendant. A morbid fear of jury trial can be voiced in any case. Neither plaintiffs nor defendants are immune from the anxiety of having to face a jury. In the final analysis, an expressed doubt about jury fairness is no more than an argument for the repeal of the Seventh Amendment. The in-between position recognized in Rule 39(c) allows a trial court to trust a jury to the extent it is willing to trust a jury within the constraints of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969).

For the foregoing separate and several reasons, Sloss' motion for reconsideration will be denied by separate order, and the case will proceed to trial with an advisory jury.