**Rita SHESKO, Plaintiff,**

v.

**CITY OF COATESVILLE, Defendant.**

**No. Civ.A.01–CV–6780.**

United States District Court,
E.D. Pennsylvania.

June 29, 2004.

---

Stephen C. Kunkle, Kunkle & Sennett, West Chester, PA, for Plaintiff.

David J. Macmain, Sheryl L. Brown, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the post-trial motion of the Defendant City of Coatesville ("Defendant" or "the City"). Following a four-day trial, a jury found that Defendant had discriminated against Plaintiff Rita Shesko ("Plaintiff" or "Shesko") on the basis of her gender when it denied her a promotion, and awarded her $88,000.00 in damages. Defendant moves this Court to enter judgment as a matter of law in its favor, or to order a new trial, or to set aside or remit the damages awarded by the jury. For the reasons stated below, Defendant's motion is denied.

### Factual Background

Plaintiff is sergeant, and the only female police officer, in the City of Coatesville's Police Department ("Department"). In November 2000, the City created two lieutenant's positions. The process for choosing officers to be nominated to the City Council for the positions began with a civil service examination comprised of a written and oral test. Plaintiff took the examination, and as a result of her score was ranked second of the four eligible candidates for the positions. Following these examinations an unscored leadership psychological examination was administered on the eligible candidates. Thereafter, the candidates were individually interviewed by a panel comprised of City Manager Paul Janssen, Police Chief Michael McMahon, and Assistant City Manager Francis Pilotti, now deceased. The result of the interview process was that Matthew Gordon, the first ranking candidate, was nominated to the City Council for the patrol lieutenant position, and Julius Canale, the fourth ranking candidate, was nominated for the administrative lieutenant position. Neither Plaintiff, nor the third ranking candidate, Terrence Alexander, was nominated for a lieutenant position. City Council approved the nominations, and as a result, Matthew Gordon and Julius Canale were promoted to lieutenant.

### Standards for Judgment as a Matter of Law and a New Trial

Judgment as a matter of law can be entered under Federal Rule of Civil Procedure 50(b) only when there is no legally sufficient basis for a reasonable jury to have found for the nonmoving party. See Fed.R.Civ.Pro. 50(a); Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149–150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In deciding whether a rule 50(b) motion should be granted, a district court must view the record as a whole, drawing "all reasonable inferences in favor of the nonmoving party." Reeves, 530 U.S. at 150, 120 S.Ct. 2097; McDaniels v. Flick, 59 F.3d 446, 453 (3d Cir.1995). The court may not weigh the parties' evidence or determine the credibility of the witnesses. Reeves, 530 U.S. at 150, 120 S.Ct. 2097; McDaniels, 59 F.3d at 453. In addition, the court must disregard all evidence favorable to the nonmoving party that the jury is not required to believe. Reeves, 530 U.S. at 150, 120 S.Ct. 2097. If the record contains even the "minimum quantum of evidence upon which a jury might reasonably afford relief," the verdict must be sustained. Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 (3d Cir.1993) (quoting Keith v. Truck Stops Corp. Of America, 909 F.2d 743, 745 (3d Cir.1990)).

On the other hand, ordering a new trial is a matter committed to the sound discretion of the district court. *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 812 (3d Cir.1984), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). Indeed, Fed. R.Civ.P. 59(a) states in relevant part:

> (a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States
> . . .

A court may grant a new trial if doing so is required to prevent injustice or to correct a verdict that was against the weight of the evidence. *Ballarini v. Clark Equipment Co.*, 841 F.Supp. 662, 664 (E.D.Pa. 1993), *aff'd,* 96 F.3d 1431 (3d Cir.1996). A court may also grant a new trial based on a prejudicial error of law. *See M.B. v. Women's Christian Alliance,* 2003 WL 21384836*2 (E.D.Pa. June 16, 2003) (citing *Klein v. Hollings,* 992 F.2d 1285, 1289–90 (3d Cir.1993)).

A new trial, however, cannot be granted merely because the court would have weighed the evidence differently or reached a different verdict. *Markovich v. Bell Helicopter Textron, Inc.*, 805 F.Supp. 1231, 1235 (E.D.Pa.1992), *aff'd,* 977 F.2d 568 (3d Cir.1992). *See Also: Olefins Trading, Inc. v. Han Yang Chemical Corp.*, 9 F.3d 282, 290 (3d Cir.1993). A court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991)(citing *EEOC v. Del. Dep't Health,* 865 F.2d 1408, 1413 (3d Cir.1989)). Thus, absent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict. *Montgomery County v. Microvote Corp.*, 2001 WL 722150, at *8, 2001 U.S. Dist. LEXIS 8727 at *26 (E.D.Pa. June 25, 2001) (citing *Goodwin v. Seven-Up Bottling Co. of Philadelphia,* No. 96–2301, 1998 WL 438488 at *3 (E.D.Pa. July 31, 1998)).

### *Discussion*

A. The Verdict

The City argues that there was insufficient evidence to support the jury's verdict in favor of Plaintiff on her claim that the City discriminated against her because of her gender when it failed to promote her to the lieutenant position.

Title VII of the Civil Rights Act of 1964 ("Title VII") states that

> It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2.

This Circuit has held that a case of failure to promote under Title VII shall follow the *McDonnell Douglas* burden-shifting framework. *Fuentes v. Perskie,* 32 F.3d 759 (3d Cir.1994). Under this framework, a plaintiff must establish a prima facie case of discrimination by showing (i) that she belongs to a protected category; (ii) that she applied for and was qualified for the position at issue; (iii) that she was not hired for that position; (iv) under circumstances that give rise to an inference of discrimination such as might occur when the position is filled by a person not

of the protected class. *Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir.1999). Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Id.* at 412. The burden then shifts back to the plaintiff, who must show that the reasons articulated by the employer were merely pretext. *Id.*

■ A plaintiff can defeat a motion for judgment as a matter of law by "pointing to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or a determinative cause of the employer's action." *Id.* at 413 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)). Thus, while the plaintiff retains the ultimate burden of proving discrimination, the factfinder's rejection of the employer's proffered reason permits the jury to infer the ultimate fact of discriminatory intent. *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 418–419 (1993)).

■ It appears that the City contends both that Plaintiff did not make out a prima facie case of discrimination and that she failed to demonstrate that the City's proffered explanation was pretext. We think it is clear, however, that Plaintiff did make out her prima facie case of discrimination by showing (1) that she is a woman; (2) that she applied for and was qualified for the lieutenant's position; (3) that she was rejected; and (4) that a man received the promotion to the lieutenant's position. *See Jones*, 198 F.3d at 410–11.

■ Once Plaintiff established her prima facie case, the burden shifted to the City "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reasons offered by Chief McMahon and City Manager Janssen for nominating Canale rather than Shesko were (1) Canale was more cerebral and analytical; (2) Canale had experience as a detective; (3) Shesko had a consensus seeking management style, that was not right for the department at the time.

McMahon testified at trial that Canale was nominated for the promotion because he had a "better vision for the department." *See* Trial Tr. (2/10/04) p. 179. When asked how he would describe Canale's management style, McMahon testified that "[Canale] had a very good grasp of the problems in town, of trying to think a little bit out of the box and working out some of these problems, wanted to work closely with the community, that sort of thing." *See* Trial Tr. (2/10/04) p. 234. However, he later testified that Shesko also had a good grasp of the problems in town and tried to think out of the box, but her management style was "more participatory consensus type than [Canale] was". *See* Trial Tr. (2/10/04) p. 245. The jury also heard that in his deposition, McMahon testified that Shesko had a "less than positive attitude" and when asked for an example of this attitude, McMahon referenced "chronic tardiness." *See* Trial Tr. (2/10/04) p. 184. Earlier at trial, however, McMahon testified that Shesko was not chronically or habitually late. *See* Trial Tr. (2/10/04) p. 110, 184. In contradiction to the reasons proffered by McMahon and Janssen for their choice in nominations, Plaintiff testified that in her meeting with Chief McMahon and Janssen following her denial of the promotion, McMahon told her that Gordon was chosen based on his score and Canale based on his performance. *See* Trial Tr. (2/10/04) p. 8.

■ There was also evidence which the Plaintiff classifies as evidence that the interview process was a sham. First, no written notes were taken during the interviews. *See* Trial Tr. (2/10/04) p. 175–176. Second, there was conflicting testimony regarding the substance of the interviews. Both McMahon and Janssen testified that each candidate for the lieutenant position was asked the same questions. *See* Trial Tr. (2/10/04) p. 175, (2/11/04) p. 19–20. Janssen specifically testified that he asked Gordon questions and that "his answers were very, very specific and on target ...". *See* Trial Tr. (2/12/04) p. 122. However, lieutenant Gordon testified at his deposition that he was not asked any questions by McMahon, Janssen, and Pilotti. *See* Trial Tr. (2/11/04) p. 100. At trial, Gordon testified that he was in fact asked "a couple" situational questions by Pilotti. *See* Trial Tr. (2/11/04) p. 102. He further testified that he did not consider the meeting to be an interview, rather, he viewed it as a "notification process." *Id.* From this inconsistency, the jury could reasonably infer that McMahon and Janssen were not being honest about the interview process and its impact on their decision of who to nominate for the lieutenant positions.

■ Furthermore, there was other circumstantial evidence of discrimination. Taking the evidence in the light most favorable to the Plaintiff, the jury could have found that McMahon's earlier decision to select Canale, rather than Shesko, for the position of detective sergeant was discriminatory. McMahon testified that he selected Canale because he had availability concerns regarding Shesko because of the fact that she had children and her husband,

John, was a member of the same police force. This is relevant to the failure to promote claim for two reasons. First, circumstantial evidence of discrimination includes evidence "that the employer in the past has subjected [the plaintiff] to unlawful discriminatory treatment ...". *Fuentes*, 32 F.3d at 765. Second, according to Janssen's testimony, one of his espoused reasons for recommending Canale that be promoted rather than Shesko was Canale's detective experience.[1]

McMahon testified that he would have had similar availability concerns for male officers, however, the jury was not required to believe McMahon on that point. *See Reeves*, 530 U.S. at 151, 120 S.Ct. 2097 (in ruling on a 50(b) motion, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe").

■ Regardless of any evidence of McMahon or Janssen's discriminatory motive, the City argues that there was no evidence of discriminatory motive on the part of the final decision maker regarding the promotion, City Council. Pursuant to the Third Class City Code, 53 P.S. § 39406, and Janssen's testimony, the City Manager nominates a candidate to City Council, and Council is to approve or deny the nomination. Under the caselaw of this Circuit, however, "it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision ...". *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir.1995)). "It is plainly permissible for a jury to conclude

---

1. In its brief, the City argues that following the placement of Canale in the detective position, McMahon put Plaintiff on the Chester County Task Force, "a move that would enable her to obtain more detective experience." If this is true, however, then it casts doubt on Janssen's explanation that he preferred Canale over Shesko for the promotion because Canale had detective experience.

that an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate decision." *Id.* Public officials cannot avoid liability for discriminatory treatment by pointing to the "rubber stamp" approval of another public agent. *Azzaro v. County of Allegheny,* 110 F.3d 968, 974 (3d Cir.1997).

Clearly McMahon and Janssen played a vital role in the decision to recommend Canale rather than Shesko for the lieutenant's position. City Council's role was limited to rejecting or approving a nomination, and therefore, it did not even have the opportunity to consider promoting Shesko because Shesko was not nominated. Furthermore, McMahon and Janssen both testified that City Council has never rejected their recommendations regarding police personnel. *See* Trial Tr. (2/10/04) p. 174–175; Trial Tr. (2/11/04) p. 55–56. We find that there was sufficient evidence for the jury to conclude that any discriminatory motive regarding the decision not to recommend Shesko for promotion infected the ultimate decision not to promote her.

 In sum, we find that the record contains at least the "minimum quantum of evidence" from which a reasonable jury could find that Plaintiff was discriminated against because of her gender, and therefore, Defendant's motion for judgment as a matter of law is DENIED. Likewise, because we do not believe that "the jury's verdict resulted in a miscarriage of justice ... or cries out to be overturned or shocks our conscience," Defendant's motion for a new trial is DENIED.

**B. Damages Award**

**1. Front Pay**

 Defendant argues that the jury's front pay award in the amount of $49,000 was too speculative and required expert testimony. The Court first notes that almost all future damages awards involve some degree of uncertainty. However, "it is well settled that the risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim." *Bartek v. Urban Redevelopment Authority of Pittsburgh,* 882 F.2d 739, 746 (3d Cir.1989)(quoting *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 889 (3d Cir.1984)). Accordingly, the court should not disturb the award of future damages absent a conclusion that the jury engaged in "unreasonable" or "wild" speculation. *Green v. USX Corp.,* 843 F.2d 1511, 1532. (3d Cir.1988), *vacated on other grounds,* 490 U.S. 1103, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989).

 We do not believe the absence of expert testimony renders the front pay award improper. *See Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 194–195 (3d Cir.1998); *Maxfield v. Sinclair International,* 766 F.2d 788 (3d Cir.1985). The Plaintiff testified as to her earnings for the years 2000–2003 [2] and her projected earnings for 2004–2009, as calculated by her, and taking into account an expected 3% raise every year and four hours of built in overtime every two weeks. *See* Trial Tr. (2/10/04) p. 11–17. Plaintiff further testified that she planned to work for the City until she could retire at age 50, approximately 8 years from the time of trial. *See* Trial Tr. (2/10/04) p. 18. Canale provided testimony regarding his earnings since his promotion to lieutenant in 2001. *See* Trial Tr. (2/11/04) p. 151–152. Ms. Newlin, a hearing resources director and executive director to the City Manager who handles payroll records, also testified regarding Shesko

---

2. In 2003, Plaintiff was out on disability for 12 weeks. At trial, Plaintiff testified as to her actual earnings for that year as well as what her base salary should have been.

and Canale's earnings from 1998 to 2003. *See* Trial Tr. (2/12/04) p. 66–67. Based on this information, the jury could reasonably calculate a front pay award.[3] We conclude that the jury's front pay award does not amount to "wild" or "unreasonable" speculation and therefore, we will not disturb the amount of the award.

### 2. Compensatory Damages

The Defendant also contends that the Plaintiff's compensatory damages award in the amount of $20,000 is against the weight of the evidence and asks us to set aside or remit the award. The use of remittitur is within the sound discretion of the trial judge, "who is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based determination." *Spence v. Board of Ed.*, 806 F.2d 1198, 1201 (3d Cir.1986). Where the verdict is so large as to "shock the conscience," the court will order the Plaintiff "to remit that portion of the verdict in excess of the maximum amount supportable by the evidence." *Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir.1983).

In order to recover compensatory damages, a Plaintiff must present evidence of actual injury. *See Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1121–22 (3d Cir. 1988). When the plaintiff's testimony is the only evidence of emotional distress, as is the case here, there must be "a reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred." *Spence*, 806 F.2d at 1201.

Plaintiff testified, *inter alia*, that she has been "sad" and "depressed," that she encounters difficulty going into work

and seeing Canale in the position of lieutenant, and that being passed over for the lieutenant position has "made it difficult" for her to do her job on a daily basis. *See* Trial Tr. (2/10/04) p. 18. In light of this evidence, we cannot say that the jury's $20,000 award for compensatory damages was not rationally based, nor does it "shock the conscience." We therefore deny Defendant's motion to set aside or remit the jury's award for compensatory damages.

An appropriate order follows.

### ORDER

And now this 29th day of June, 2004, upon consideration of Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial, or in the alternative, to set aside or remit the damages, and for the reasons stated in the accompanying Memorandum, Defendant's Motion is DENIED.

---

**3.** Though the court cannot be certain of the jury's exact calculations, the $49,000 front pay award appears to be an average of the difference in earnings between Shesko and Canale since the time of Canale's promotion to lieutenant, multiplied by the approximate number of years until Shesko's retirement.