Edward J. **MARRA**, Jr. & Albert Digravio Plaintiffs,

v.

**PHILADELPHIA HOUSING AUTHORITY, Defendant.**

No. CIV.A. 03–3832.

United States District Court, E.D. Pennsylvania.

Dec. 9, 2005.

Nancy D. Wasser, Law Offices of Nancy Wasser, Philadelphia, PA, for Plaintiffs.

Melanie Mecka Kennedy, Jessamyne M. Simon, Klett, Rooney, Lieber & Schorling, Philadelphia, PA, for Defendant.

Howard Zavodnick, Philadelphia, PA, for Milton D. Soiferman.

## MEMORANDUM

ROBRENO, District Judge.

### I. BACKGROUND

Plaintiffs, Edward J. Marra, Jr. ("Mr.Marra"), and Albert DiGravio ("Mr.DiGravio") brought this action against the Philadelphia Housing Authority ("the PHA"). Plaintiffs are, respectively, a former and current employee of the PHA who allege violations of Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons.Stat. §§ 951–963. Plaintiffs contend that while they were employed by the PHA, the PHA unlawfully retaliated against them after they testified in a federal trial in which the PHA was a defendant ("the *Paladino* trial").

Mr. Marra alleges that his employment was terminated as a result of his testimony in the *Paladino* trial. The PHA contends that Mr. Marra was terminated because of a "reorganization." Mr. Marra responds that there was no "reorganization" as asserted by defendant.

Mr. DiGravio alleges that he was transferred from a supervisory position to a less desirable position as an inspector with Section 8 housing as a result of his testimony in the *Paladino* trial. The PHA contends that Mr. DiGravio volunteered to be transferred. Mr. DiGravio responds that he did not volunteer.

 A jury trial began on February 17, 2005.[2] On February 24, 2005 the jury returned a verdict in favor of plaintiffs

---

1. The Court granted summary judgment in favor of defendant on the Title VII claims because of plaintiffs' failure to exhaust administrative remedies.

2. Defendant argues, as it did in its motion in limine, that the PHRA does not entitle plaintiffs to a jury trial. The Court recognizes that the Supreme Court of Pennsylvania concluded that there is no right to a jury trial in employment discrimination actions brought

finding that the PHA retaliated against plaintiffs in violation of the PHRA and section 1983. The Court, however, directed a verdict in favor of the PHA on the section 1983 claim because the jury also found that Carl Greene ("Mr.Greene"), whom the Court determined to be the PHA's sole policymaker, did not personally order or acquiesce in any retaliation against plaintiffs.[3] The verdict on the PHRA claim stood. The jury awarded Mr. Marra back pay in the amount of $208,676 and compensatory damages in the amount of $102,000. The jury awarded Mr. DiGravio compensatory damages in the amount of $70,000.

At the close of plaintiff's case, defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court did not grant the motion. At the close of all evidence, defendant again moved for judgment as a matter of law. The Court did not grant the motion. Defendant timely renewed those requests in the motion for judgment as a matter of law, or in the alternative for a new trial, now before the Court. Defendant makes five arguments: (A) Mr. Marra did not meet his burden of showing a causal connection; (B) the jury's verdict that defendant retaliated against plaintiffs was against the weight of the evidence; (C) the jury's verdict is internally inconsistent; (D) the Court erred in denying defendant's motion in limine relating to the admission of a supervisor's threat made to Mr. DiGravio; and (E) plaintiff's counsel engaged in prejudicial misconduct during the trial. For the following reasons, defendant's motion is denied.

## II. DISCUSSION

Defendant moves for a judgment as a matter of law under Federal Rule of Civil

---

under the PHRA. *See Wertz v. Chapman Twp.*, 559 Pa. 630, 741 A.2d 1272, 1279 (1999). "The Pennsylvania Supreme Court's ruling, however, does not dispose of the question of whether a jury trial under the PHRA is required in federal court." *Cortes v. R.I. Enter., Inc.*, 95 F.Supp.2d 255, 260 (M.D.Pa.2000).

The Pennsylvania Supreme Court in *Wertz* concluded that the Pennsylvania General Assembly did not intend for plaintiffs to have a right to a jury trial in PHRA actions. *Wertz*, 741 A.2d at 1273. However, as noted by the *Cortes* court, such a right, even if not made available under the state statute, is mandated under the Seventh Amendment of the United State Constitution, which preserves the right to a trial by jury "[i]n Suits at common law, where the value in controversy shall exceed Amendment twenty dollars," U.S. Const. amend. VII. *Cortes*, 95 F.Supp.2d at 261–62; *see also Graham v. Toltzis Commc'n, Inc.*, No. Civ.A. 98–6269, 2000 WL 433978, at *1 (E.D.Pa. April 18, 2000) ("In an action in federal court for money damages pursuant to the PHRA, a plaintiff has an independent right, guaranteed by the Seventh Amendment ... to a trial by jury. The Supreme Court of Pennsylvania does not have the power to alter this outcome; nor did it purport to do so.").

Most recently, a court in the Eastern District of Pennsylvania concluded:

> While Defendant is correct that there is no right to a jury trial under the PHRA in Pennsylvania state court, Defendant's removal of this case to this court renders that fact irrelevant. It is federal law, not state law, that determines the right to a jury trial when pursuing a state-created right in federal court. Pursuant to the Seventh Amendment's guarantee of the right to a trial by jury for legal claims in actions analogous to suits at common law, federal law recognizes the right to a jury trial for compensatory claims under the PHRA.

*Heater v. Kispeace*, 2005 WL 2456008 (E.D.Pa. Oct. 5, 2005) (citations omitted); *see also Grabosky v. Tammac Corp.*, 127 F.Supp.2d 610, 624 (M.D.Pa.2000) (holding that plaintiff is entitled to jury trial for legal claims brought under the PHRA). This Court agrees.

3. Under section 1983, a defendant employer is liable only if an agent of the defendant with final and unreviewable authority was responsible for the action that deprived plaintiff of a constitutional right. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). This element is not part of the PHRA.

Procedure 50, on in the alternative, for a new trial under Federal Rule of Civil Procedure 59. Under Rule 50,

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 428 (3d Cir.2003) (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir.1978)). Judgment should only be granted if "the record is critically deficient of [a] minimum quantity of evidence from which a jury might reasonably afford relief." *Raiczyk v. Ocean County Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir.2004) (quoting *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133–34 (3d Cir. 1985)). In reviewing the evidence in the record,

> the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In the alternative, defendant moves for a new trial under Federal Rule of Civil Procedure 59. Under Rule 59,

> [a] new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in action at law in the courts of the United States ....

Fed.R.Civ.P. 59(a). A new trial may be granted where, as argued in this case by defendant, the verdict is against the weight of the evidence. *See, e.g., Allstate Ins. Co. v. American Rehab & Physical Therapy, Inc.*, 330 F.Supp.2d 506 (E.D.Pa. 2004); *Shesko v. City of Coatesville*, 324 F.Supp.2d 643 (E.D.Pa.2004). However, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993). "[T]he purpose of this rule is to ensure that the trial court does not supplant the jury verdict with its own interpretation of the facts." *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 290 (3d Cir.1993).

A. The Causal Connection Between Mr. Marra's Federal Court Testimony and Subsequent Termination.

■ For a plaintiff to establish a prima facie case of illegal retaliation, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) he suffered an adverse action by the employer either

after or contemporaneous with the employee's protected activity; and (3) a causal connection exists between the employee's protected activity and the employer's adverse action. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508–09 (3d Cir.2004). Defendant contends that Mr. Marra did not establish the third element, the requisite causal connection.

■ To establish a causal connection, a plaintiff must prove either (1) an unusually suggestive temporal proximity between the protected employee activity and the adverse action, (2) a pattern of antagonism coupled with timing to establish a causal link, *see Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir.1997), *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir.1997), or (3) the "evidence gleaned from the record as a whole" infers causation, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000).

■ In the instant case, the Court agrees with the defendant that the gap of time between Mr. Marra's involvement in the trial and his eventual firing (approximately ten months) is not "unusually suggestive" of a retaliatory motive. However, viewing all facts in the light most favorable to Mr. Marra and granting him all reasonable inferences from those facts as the Court is required to do, the Court finds that it was reasonable for the jury to conclude that Mr. Marra demonstrated a "pattern of antagonism" against him by the PHA between his pretrial and trial testimony and his eventual termination. *See, e.g., Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288–89 (3d

Cir.2001); *Woodson*, 109 F.3d at 921 (sufficient causal connection where pattern of retaliation included unsatisfactory job placement, failure to respond to plaintiff's complaint of racist graffiti, and eventual termination approximately two years after filing EEOC complaint); *Robinson v. SEPTA, Red Arrow Div.*, 982 F.2d 892 (3d Cir.1993) (sufficient causal connection where supervisors disciplined plaintiff for minor matters, miscalculated points for absences from work, generally tried to provoke plaintiff to insubordination, and eventually terminated plaintiff approximately two years after filing union complaint).

In May of 2000, Mr. Marra was subpoenaed to testify at a pretrial deposition in the *Paladino* case. At the deposition, Mr. Marra gave testimony which was unfavorable to the PHA. Also, in May of 2001, Mr. Marra was subpoenaed by plaintiffs' counsel in the *Paladino* case to testify on their behalf at the discrimination trial in June of 2001.

Between Mr. Marra's testimony at the pretrial deposition and his trial testimony, and then after his trial testimony, Mr. Marra was subject to a pattern of antagonism which included:

1. In June 2000, soon after his pretrial deposition, Mr. Marra received written notice of an involuntary change in his employee status from Assistant General Manager to Project Manager. As a result of this demotion, he lost a $425 stipend to cover the costs of using his private vehicle for PHA business.[4]

2. In July 2001, soon after Mr. Marra testified at the *Paladino* trial, the hard

---

4. Defense counsel again argues, as she did in her motion in limine, that the Court should not have permitted testimony pertaining to this demotion because the demotion preceded the purported protected activity, Mr. Marra's federal court trial testimony in the *Paladino* case. The Court disagreed with defendant then and continues to do so now. The sub-

poena served upon Mr. Marra requiring him to testify at a pretrial deposition alerted defendant that Mr. Marra is a potential witness against the PHA in the *Paladino* trial. Any subsequent adverse employment actions suggesting retaliatory animus are relevant to the matter before the Court.

drive on his computer was vandalized at work. Although he reported the incident, the PHA took no action.

3. In July 2001, Mr. Marra was excluded from a meeting of supervisors to which, prior to his testimony in the *Paladino* case, he would have expected to have been invited to attend.

4. In July 2001, a subordinate of Mr. Marra was demoted and transferred to another department, without Mr. Marra's consent.

5. "Shortly after" the *Paladino* trial of June 2001 (Trial Tr. 127, Feb. 17, 2005), at a meeting of supervisors, Mr. Greene, the PHA's Executive Director, gave Mr. Marra a "look of disgust" when Mr. Marra admitted that he had testified for plaintiffs in the *Paladino* trial.

This pattern of antagonism culminated in March 2002. Mr. Marra, allegedly as a result of a "reorganization," was placed on "layoff status" and terminated from his employment.

Viewed as a whole, a reasonable jury could conclude that there was a link between Mr. Marra's protected behavior and subsequent discharge as the PHA engaged in a pattern of antagonism in the intervening period. The Court finds no reason to overturn the decision of the jury based on this evidence.

B. A Reasonable Jury Could Believe that Plaintiffs Established, by the Preponderance of the Evidence, that the PHA Discriminated Against Plaintiffs.

■ Defendant argues that there is insufficient evidence for a reasonable jury to find, by the preponderance of the evidence, that defendant retaliated against plaintiffs. The Court disagrees.

With respect to Mr. DiGravio, after his testimony at the *Paladino* trial on behalf of plaintiffs, he was transferred to less desirable employment with Section 8. Defendant argues that it transferred Mr. DiGravio because it "reasonably believed he had volunteered to go" to that position. At trial, Mr. DiGravio responded by testifying that he never volunteered to be transferred to Section 8. Additionally, Georgette Galbreth ("Ms.Galbreth"), an assistant general manager at PHA, testified that Mr. DiGravio did not specifically volunteer to be transferred to Section 8, but merely suggested that a supervisor be transferred.

Whether or not Mr. DiGravio volunteered to the transfer is a jury question. The Court finds that, viewing all facts in the light most favorable to Mr. DiGravio and granting him all reasonable inferences from those facts as this Court is required to do, a reasonable jury could have disbelieved defendant's proffered non-retaliatory justification for Mr. DiGravio's transfer and found that the proffered reason was a pretext for discrimination.

With respect to Mr. Marra, after his testimony at the *Paladino* trial on behalf of plaintiffs, he was subsequently terminated. Defendant argues that it terminated Mr. Marra because it "reasonably believed Marra's project manager position had become an unnecessary layer of management and eliminated his position in a reorganization." (Def.'s Br. 21.) At trial, Mr. Marra responded by showing that he was the only supervisor who lost his job as a result of this "reorganization."

■ Whether or not Mr. Marra was terminated because of the "reorganization" or for discriminatory reasons is a jury question. The Court finds that, viewing all facts in the light most favorable to Mr. Marra and granting him all reasonable inferences from those facts, a reasonable jury could have disbelieved defendant's proffered non-retaliatory justification for

Mr. Marra's termination and found that the proffered reason was a pretext for discrimination.

### C. The Jury's Verdict Is Consistent.

Defendant asserts that the jury's finding that (1) the PHA retaliated against plaintiffs in violation of the PHRA and (2) the finding that Mr. Greene did not personally direct or acquiesce in any retaliation against plaintiffs, are inconsistent. The Court disagrees and finds that these verdicts are consistent.

■ The case went to the jury with both the section 1983 and the PHRA claims. Under section 1983, to prevail, plaintiffs had to prove that Mr. Greene, as the sole PHA official with final and unreviewable authority, was responsible for the action which deprived plaintiffs of their constitutional rights. *See Andrews*, 895 F.2d at 1480. On the other hand, under the PHRA, liability is imposed upon the PHA for the discriminatory conduct of any agent of PHA who was acting within the scope of their employment, regardless of

Mr. Greene's personal involvement or knowledge.

In the section 1983 action, the jury found that the PHA was liable for retaliation against plaintiffs. Jury Verdict Sheet, Quest. 3 & 5. The jury, however, also found that Mr. Greene did not "personally order[ ] or acquiesce[ ] in the retaliation" against plaintiffs. Jury Verdict Sheet, Quest. 4 & 6. Since the jury found that Mr. Greene was not liable, there could be no liability as to the PHA under section 1983. Thus, the Court directed a verdict in favor of the PHA on the section 1983 action.

With respect to the PHRA claim, in contrast, the jury found that the PHA was liable for retaliation against plaintiffs. Jury Verdict Sheet, Quest. 1 & 2. There was ample support for the jury to find that agents of PHA (and not Mr. Greene) retaliated against plaintiffs.[5] The jury's verdict with respect to Mr. Greene's personal involvement or knowledge of the retaliatory conduct is inapposite to PHA's liability under the PHRA claim. Thus, the verdicts are not inconsistent.[6]

5. There was evidence from which the jury could have found that Ramesh Panchwagh (a general manager), Nicholas DiPiero ("Mr.Di-Piero") (a construction manager), Michael Liethead (Senior Deputy Executive Director), Ms. Galbreth (an assistant general manager), and Carolyn Carter (an assistant executive director) engaged in discriminatory conduct.

6. Defendant points to the cases of *Paladino v. Philadelphia Housing Auth.*, 65 Fed.Appx. 385, 2003 WL 1550963 (3d Cir.2003), and *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847 (10th Cir.2000), to support its argument that the verdict is inconsistent. *Paladino* and *Heno*, however, are distinguishable.

In *Paladino*, plaintiffs filed reverse-race discrimination lawsuits against the PHA and four individual defendants (one of which was dismissed before the jury deliberated). *Paladino*, 65 Fed.Appx. at 386. The jury found in favor of plaintiffs as to their claims against the PHA, but against the plaintiffs as their claims against the three individual defen-

dants. *Id.* The Third Circuit found that "because none of the three individual defendants had a wrongful intent, and no other PHA agent could plausibly be at fault, then the PHA cannot be liable." *Id.* at 387.

In the instant case, in contrast, the suit was filed against the PHA only. Plaintiffs did not file suit against any individual employees of PHA. The jury was free to impose liability upon the PHA, under the PHRA, if the jury found that any agent acting within the scope of their employment acted with discriminatory animus. The jury cleared only Mr. Greene of wrongdoing. The jury did not clear any of the other employees or officers implicated in the allegations of retaliation. In other words, the Court cannot conclude here, as the Third Circuit did in *Paladino*, that "no other PHA agent could plausibly be at fault." Accordingly, in contrast to *Paladino* where all of the alleged actors were cleared of wrongdoing, the verdicts here are consistent.

Likewise, in *Heno*, also an employment discrimination case, the jury found that the em-

**D. The Court Did Not Err in Admitting Evidence of Alleged "Threats" by Nicholas DiPiero.**

██ Defendant contends that the Court erred in permitting testimony relating to an alleged statement made by Mr. DiGravio's immediate supervisor, Nicholas DiPiero ("Mr.DiPiero"). Mr. DiPiero allegedly told Mr. DiGravio that there would be repercussions for anyone who testified at the *Paladino* trial. Defendant argues that the testimony is hearsay and is not an admission by a party-opponent under Federal Rule of Evidence 801(d)(2)(D).

Defendants argument is without merit. There are two elements of an admission by a party-opponent under Rule 801(d)(2)(D): (1) there must be a statement by a party's agent during the existence of that agency relationship, and (2) the statement must be within the scope of that agency or employment. Mr. DiPiero's alleged statement to Mr. DiGravio satisfy both elements.

First, Mr. DiPiero was a supervisor at PHA who could recommend that disciplinary action be taken against Mr. DiGravio and who was responsible for evaluating Mr. DiGravio's performance. In that capacity, he is an agent of PHA. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1216 (3d Cir.1995) (holding that statements of a supervisor who is authorized to speak with subordinates about the employer's employment practices are admissible against the employer); *Big Apple BMW, Inc. v. BMW of N. America, Inc.*, 974 F.2d 1358, 1372 (3d Cir.1992) ("[T]he vicarious admission rule of Federal Rule of Evidence 801(d)(2)(D) does not require that a declarant have the authority to bind its employer."). Mr. DiPiero made his statement to Mr. DiGravio during the existence of that supervisory role with PHA.

Second, the threat to Mr. DiGravio that he will face "repercussions" involved the employment relationship between PHA and Mr. DiPiero. Mr. DiPiero was the agent of PHA authorized to make recommendations to discipline Mr. DiGravio and was responsible for evaluating his performance. The comments to Mr. DiGravio were within the scope of Mr. DiPiero's supervisory role at PHA.[7]

**E. The Alleged Misconduct of Plaintiffs' Counsel Did Not Prejudice the Jury.**

██ Defendant requests a new trial because of the "persistent misconduct during the trial by Plaintiff's attorney." (Def.'s Br. 34.) In particular, defendant expresses concern over the following conduct of plaintiffs' counsel: (1) reference to defendant's attorneys as being from "large law firms"; (2) reference to facts not in evidence; (3) exclamations of "thank you" to the Court after sidebar conferences; and (4) references that defendant received "hundreds of millions of dollars each year."

---

ployer used race as a motivating factor in its decision not to promote plaintiff. *Heno*, 208 F.3d at 851. Yet, the jury also found that the sole agent that made that promotion decision did not use race as a motivating factor. *Id.* The court ordered a new trial because the verdicts were inconsistent. *Id.* at 853.

However, in the instant case, Mr. Greene is not the sole agent whose actions may create liability upon PHA under the PHRA claim. Rather, allegations of misconduct were raised against numerous agents of PHA, any of which can create liability upon the PHA.

7. As to the panoply of challenges to other evidentiary rulings, which were not fully developed by defendant in post-trial motions, the Court has reviewed the challenges and finds them to have no merit. Even if the Court's rulings were incorrect, they certainly do not rise to the level required for a new trial under Federal Rule of Civil Procedure 61. Additionally, as to any claim for remittitur, the argument was not developed at all in defendant's memorandum, and therefore, it is waived. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir.1997). Even if the argument was fully developed, it has no merit.

In determining whether alleged attorney misconduct warrants a new trial, the court must determine whether the conduct was so prejudicial that it was "reasonably probable" that the verdict was influenced by the misconduct such that a miscarriage of justice would result if a new trial was not granted. *See Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253, 264 (3d Cir.1995); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206–07 (3d Cir.1992). In this case, counsel's comments, even if inappropriate, certainly do not rise to the level of misconduct or prejudicial statements which carry a reasonable probability that the verdict was improperly influenced.

## III. CONCLUSION

For the foregoing reasons, defendants renewed motion for a judgment as a matter of law, or in the alternative for a new trial, is denied. An appropriate order follows.

## *ORDER*

**AND NOW**, this **9th** day of **December, 2005**, it is hereby **ORDERED** that defendant's motion for leave to file a reply brief in support of defendant's motion for judgment as a matter of law or for a new trial on plaintiffs' claims under the Pennsylvania Human Relations Act (doc. no. 128) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for judgment as a matter of law renewed on Counts III and IV of plaintiffs' complaint or, in the alternative, for a new trial or, in the alternative, for remittitur of excessive damages (doc. no. 109) is **DENIED**.

■ **IT IS FURTHER ORDERED** that plaintiffs' motion for delay damages pursuant to Pennsylvania Rule of Civil Procedure 238 (doc. no. 106) is **DENIED**.[1]

■ **IT IS FURTHER ORDERED** that plaintiffs' motion for equitable relief and to mold the verdict (doc. no. 108) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are entitled to post-judgment interest as permitted under 28 U.S.C. § 1961(a). Plaintiff Marra is entitled to pre-judgment interest on the back-pay award.[2] All other requests for equitable relief are denied.

1. Plaintiffs seek delay damages for their compensatory-damages awards. Delay damages are available to a plaintiff in a civil action when "seeking monetary relief for bodily injury, death or property damage." Pa. R. Civ. P. 238(a)(1). In plaintiffs' complaint, plaintiffs sought compensation for "past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, and impairment in quality of life." (Compl.¶ 18.) The instructions to the jury mimic the claim for damages asserted in the complaint. (Jury Instr. ¶¶ 62–68.)

 In such circumstances, plaintiffs are not entitled to delay damages. The Pennsylvania Superior Court has previously held that delay damages are not available where a plaintiff is seeking recovery for emotional injury, loss of reputation, humiliation, and mental anguish because such do damages do not constitute "bodily injury" within the meaning of Pennsylvania Rule of Civil Procedure 238. *See*

 *Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730 (1989); *Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 488 A.2d 1117 (1985); *see also Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890 (1995) (rejecting claim for delay damages where relief in libel action awarded for damage to reputation).

2. To make whole the victims of unlawful discrimination, it is within the Court's discretion to award plaintiff prejudgment interest in cases brought under the PHRA. *See* 43 Pa. Cons.Stat. § 962 ("If the court finds that the respondent has engaged in ... an unlawful discriminatory practice ..., the court shall ... order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate."); *O'Neill v. Sears, Roebuck & Co.*, 108 F.Supp.2d 443 (E.D.Pa. 2000); *Rush v. Scott Specialty Gases, Inc.*, 940

IT IS FURTHER ORDERED that plaintiff's supplemental motion for relief (doc. no. 118) is DENIED.

AND IT IS SO ORDERED.

F.Supp. 814 (E.D.Pa.1996). In Title VII cases, "there is a strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities." *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir.1995); *see also Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir.1996). Given the similarity of the goals of the available remedies under Title VII and the PHRA-to make the victims of discrimination whole-the Court will adhere to the presumption in this action under the PHRA. In the instant case, there are no "unusual inequities" and plaintiff Marra is entitled to prejudgment interest on the back-pay award.

The rate of pre-judgment interest to be applied to the back-pay award is not specified by statute. Instead, the prejudgment interest to be applied is within the Court's discretion. Here, the pre-judgment interest rate is to be calculated on the Internal Revenue Services adjusted prime rate as provided at 26 U.S.C. § 6621(a)(1), paid from the respective dates that the lost wages accrued (from March 22, 2002, the date of plaintiff Marra's termination of employment, until February 24, 2005, the date of the entry of judgment), and compounded quarterly. *See Rush*, 940 F.Supp. at 818; *Taylor v. Cent. Pa. Drug & Alcohol Serv. Corp.*, 890 F.Supp. 360, 369 (M.D.Pa.1995).